**GOODHUE v. UNITED STATES.**

No. 42943.

Court of Claims.

Dec. 7, 1936.

Truman Henson, of New York City, for plaintiff.

Guy Patten, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

BOOTH, Chief Justice.

Plaintiff sues to recover a refund of income taxes paid for the calendar year 1929. The facts are stipulated.

Plaintiff was, during the period of this controversy, an employee of the Chicago Pneumatic Tool Company, a New Jersey corporation, and as such entered into a written contract with the corporation on February 23, 1924, to purchase 1,000 shares of its capital stock. This contract was obviously one granted by the corporation to employees to encourage them in acquiring stock in the same.

By the terms of the contract plaintiff agreed to pay the corporation $82.50 per share for the stock. Payments were to be made in the following manner: The corporation was to credit at least one-half of all bonus or similar payments in excess of plaintiff's salary upon the purchase price of the stock, and to also credit plaintiff's indebtedness for the stock with an amount equal to the dividends actually paid by the corporation on a like amount of its outstanding stock subsequent to the date of the contract. Plaintiff was to pay interest upon his indebtedness and receive credit with interest on payments made.

The contract provided in terms that the stock was not to be delivered until payments therefor "shall be sufficient to pay for the same in full, after making the adjustments above provided for." The parties admit that only 900 shares of stock are involved in this case, and that on November 19, 1928, the plaintiff had paid upon the purchase price for the same the sum of $40,240.

Some time prior to November 19, 1928, the corporation concluded to make a

change in its capital structure and to accomplish same there was offered and accepted by plaintiff a proposition to cancel his contract of February 23, 1924, and receive for his rights to purchase the 900 shares of stock involved the sum of $45,327.22, subsequently paid January 9, 1929; in cash, i. e., the sum paid in with interest thereon, and 2,935 shares of new class B stock which were issued and delivered to plaintiff on January 22, 1929.

It is conceded by the stipulation of facts that the fair market value of the class B stock of the corporation which plaintiff received January 22, 1929, was $102,725, i. e., $35 per share, and that this sum at least represents the difference in value between plaintiff's original contract to purchase stock, entered into February 23, 1924, and what he received as consideration for the cancellation of the same.

On March 15, 1930, plaintiff filed his income tax return for the calendar year 1929. This return disclosed a net income of $47,141.81 and a tax liability of $3,685.19. It did not include any part of the sum of $102,725 noted above. Plaintiff paid the tax of $3,685.19 during the year 1930, and on May 1, 1930, a letter advised the Commissioner of Internal Revenue of plaintiff's transactions with the corporation and asked for a ruling with respect to plaintiff's tax liability thereunder.

The Commissioner advised the plaintiff that he was not a stockholder of the corporation in 1928 and that there should have been included in his return the sum of $45,327.22 received by him in cash for the cancellation of his contract of 1924 and the sum of $102,725, the value of his stock received in 1929, less only the $40,240 paid by him in cash prior to 1929, and that upon this basis $107,812.22 was income taxable as a capital net gain for 1929.

The plaintiff on March 4, 1931, adopting the Commissioner's ruling, filed an amended return for 1929 and paid an additional tax of $12,685.77 and $737.84 interest. Plaintiff's first refund claim was filed June 11, 1932, wherein a refund of a $7,434.75 overpayment of taxes for 1929 was claimed. This claim was denied by the Commissioner on March 8, 1933. On January 31, 1933, plaintiff filed an amend-

ed refund claim setting forth an overpayment of 1929 taxes in the sum of $13,423.61. This claim was rejected by the Commissioner April 11, 1933. The refund claims were timely and the court has jurisdiction.

Both of plaintiff's refund claims were predicated upon a contention that the stock received by plaintiff in 1929 "was received in a nontaxable exchange pursuant to a plan of reorganization * * * and did not constitute taxable income to him in any amount in excess of the money received by him in the said sum of $45,327.22." The amended refund claim included the additional contention that any income received by plaintiff from the corporation was received in 1928 and plaintiff received no income in 1929.

The Revenue Act of 1928 (45 Stat. 816) now quoted is the applicable statute:

"§ 112. Recognition of gain or loss.

"(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss determined under section 111, shall be recognized, except as hereinafter provided in this section.

"(b) *Exchanges solely in kind*— * * *

"(3) *Stock for Stock on Reorganization.* No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged, solely for stock or securities in such corporation or in another corporation a party to the reorganization. * * *

"(c) *Gain from exchanges not solely in kind*—(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property." 26 U.S.C.A. § 112 (a), (b) (3), (c) (1) and note.

In order to sustain the plaintiff's contention it is essential for the court to hold that the plaintiff was in 1928 a stockholder in the corporation, and that he ex-

changed his holdings for the new stock he received in 1929. We think the facts preclude such a holding. The plaintiff did not during the year 1928 do more than he was obligated to do under his contract with the corporation to maintain his right to eventually acquire stock in the corporation. It is true this right was one of greatly increased value over its original one and a substantial profit was available, and due to this situation the plaintiff was offered in 1928 an opportunity to realize this gain. Without this offer the plaintiff was possessed of an executory contract in 1928, a right to acquire stock in the future. What happened in 1928 was an offer and acceptance of a proposition essential for the corporation to make to the plaintiff in order to effectuate its change of financial structure. The plaintiff on this date was indebted to the corporation in a sum in excess of $34,000 which must be liquidated before he received a single one of the 900 shares under contract of purchase. The stock of the corporation had advanced materially in price, and the right possessed by the plaintiff to purchase the same had advanced accordingly. In other words, the plaintiff's original investment had increased in value from an amount of cash invested to the market value of his right to purchase stock.

Plaintiff, who had adopted the cash and disbursements policy in keeping his accounts and making his tax returns, did not receive any portion of his capital gains in 1928. He received both cash and stock in 1929. What he received in 1928 was an express agreement to do what the agreement obligated the corporation to do when the corporation received authority to consummate the reorganization, and pay as agreed "as soon as conveniently practicable thereafter."

The corporation did not legally amend its certificate of incorporation until the last day of the last month of the year, 1928, i. e., December 31, 1928, and manifestly plaintiff's rights in the premises were dependent upon this act. The contract of November 19, 1928, contained no provision obligating the corporation to pay the cash mentioned and deliver the 2,935 certificates of stock to the plaintiff contemporaneously with its effective date.

The plaintiff did not exchange stock for stock in either 1928 or 1929; as a practical business transaction he sold what may be and commonly is designated as "stock rights" and received for them cash and actual certificates of stock under a plan of reorganization adopted by the corporation granting the rights. For these rights he received payment in 1929 and realized the profit computed by the Commissioner upon his amended tax return in 1929. The plaintiff possessed contingent paper profits in 1928 and actual ones in 1929. MacLaughlin, Collector, v. Alliance Insurance Co., 286 U.S. 244, 52 S.Ct. 538, 76 L.Ed. 1083.

An argument is advanced that the cost price of the stock received by plaintiff in 1928 was exactly the cost of the same in 1929 and hence no profit could be realized in 1929. The fallacy of the contention as we see it is the fact that the contract to purchase stock executed in 1928 fixed, among other things, the purchase price to be paid when the stock was issued at a later date, i. e., 1929, and when issued it represented a purchase price which did no more than absorb the profits of the purchaser. The purchaser was content to reinvest his capital gains by accepting the new stock issue of the employing corporation. It is true plaintiff agreed to do this in 1928, but the agreement was not consummated until 1929. No unconditional offer existed in 1928 which bound the corporation to issue and deliver its new stock to the plaintiff simultaneously with its acceptance. The plaintiff gained no *actual* increase in assets until 1929.

The petition will be dismissed. It is so ordered.