## ADAMS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9069.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 7, 1946.

Reargued March 5, 1946.

Decided April 16, 1946.

MARIS and GOODRICH, Circuit Judges, dissenting.

———◆———

Sydney A. Gutkin, of Newark, N. J., for petitioner.

Helen Goodner, of Washington, D.C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and Carlton Fox, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before BIGGS, MARIS, GOODRICH, McLAUGHLIN, and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

Basically, this case presents the same issues as Bazley v. Commissioner, 3 Cir., 155 F.2d 237. There are two factual differences, however, which call for further consideration. As in Bazley, we have before us a petitioner who is the principal shareholder[1] of a tightly held corporation.

The taxpayer, in connection with the elimination of old common stock and the issuance of new without par value, received debentures distributed by the corporation.[2] The bonds were worth not less than $164,208.82, and regularly earned and paid the interest due on them. At the time of their distribution, the corporation had accumulated earnings and profits since February 28, 1913, in a sum at least equal to $164,514.82.[3] The corporate books showed no change in its surplus account following or as a result of the distribution of the bonds.[4]

The Tax Court found there was no legitimate reorganization within the meaning of the Revenue Code, Section 112,[5] and that this was a distribution "essentially equivalent to the distribution of a taxable dividend." Section 115(g).[6]

Both conclusions are challenged. We are urged to reverse the Tax Court on the ground that there is here a legitimate reorganization because it was undertaken to save an annual New Jersey franchise tax in the amount of $400 and achieve a saving in corporate income tax resulting from the right to deduct interest paid on the bonds. The Tax Court took a rather skeptical view of these so-called reasons for the reorganization, pointing out the obvious financial disadvantage to the corporation in agreeing to pay a huge interest charge on almost $300,000 worth of debenture bonds to achieve a reduction in corporate tax liability of a much lesser sum. It concluded that the "recapitalization and distribution of debentures" by the corporation "had no legitimate business purpose."

We agree with this conclusion. In Bazley, we pointed out that Congress did not intend to exempt all "reorganizations" from tax consequences. Only those "required by business exigencies" or "undertaken for reasons germane to the continuance of the corporation" allegedly reorganized may qualify for the exemption.[7] The intent of Congress in allowing Section 112 to remain in the 1934 Revenue Act, 26 U.S.C.A. Int.Rev.Acts, page 692, was to permit, tax free, "legitimate reorganizations required in order to strengthen the financial condition of the corporation. * * * *"[8] In the light of these requirements, we believe the Tax Court, applying the proper criterion, reached the correct conclusion. This was not the kind of corporate reorganization which Congress intended to make tax free.

---

[1] Petitioner held 5,903 out of a total of 5,914 shares outstanding. The authorized capital was 6,000 shares of $100 par value.

[2] The following "plan of reorganization" was consummated: (1) A reduction in authorized capital stock from $600,000 represented by 6,000 shares of a par value of $100 each, of which 5,914 shares of $591,400 were issued and outstanding, to $295,700, to be divided into 5,914 shares without nominal or par value. (2) The issuance of debenture bonds in the aggregate principal amount of $295,700, bearing interest at the rate of 6 per cent per annum, payable semiannually, the principal to be payable 20 years from the date thereof, plus 5,914 shares of the new no-par common stock, on the basis of one $50 bond and one share of no-par value common stock for each of the present $100 par value shares surrendered. There was compliance with the provisions of the New Jersey law regarding such corporate transactions.

[3] $111,596 had been capitalized by stock dividends declared in prior years.

[4] The old par capital stock account was debited with $591,400 and the new no-par capital stock account was credited with $295,700, and the balance of $295,700 was credited to a "Debenture Payable" account. The surplus account was not affected.

[5] 26 U.S.C. (1940 ed.) Sec. 112, 26 U.S.C.A. Int.Rev.Code, § 112.

[6] 26 U.S.C. (1940 ed.) Sec. 115(g), 26 U.S.C.A. Int.Rev.Code, § 115 (g).

[7] Treasury Regulations 103, Sec. 19.112 (g)-1, Sec. 19.112 (g)-2.

[8] See Report by Chairman Doughton of the House Ways and Means Committee, accompanying the submission of the Revenue Act of 1934 (H.R.No.704, 73d Cong., Second Session).

248

We come now to the second point of departure. The precise question is whether the Tax Court's conclusion that this was a distribution essentially equivalent to a distribution of a taxable dividend may stand in view of the absence of a corresponding reduction in the surplus account. In determining tax liability, bookkeeping entries are not necessarily conclusive. Income tax liability does not stand or fall with the particular method adopted by corporate accountants in reflecting transactions under scrutiny. Here again, actions count. What was accomplished by the transaction? The Tax Court inquired and found that what appears to be a distribution out of capital is in reality made out of accumulated earnings and profits. If over the years since February 28, 1913, the corporation piled up earnings and, qua bookkeeping, imprisoned them in the capital account through the issuance of nontaxable stock dividends,[9] a subsequent distribution in money or bonds of an amount not in excess of such accumulated earnings and profits can partake of the quality of a dividend distribution. Section 115(b),[10] "every distribution is made out of earnings or profits to the extent thereof." Corporate accounting concepts are not controlling. Commissioner v. Estate of Bedford, 1945, 325 U.S. 283, 65 S.Ct. 1157; Commissioner v. Wheeler, 1945, 324 U.S. 542, 65 S. Ct. 799; cf. Helvering v. Gowran, 1937, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224.

Once it is concluded that the debentures were distributed out of earnings or profits accumulated since February 28, 1913, taxation must result. To hold otherwise would be to permit, by means of bookkeeping entries, the use of the Section 112 exemption as a device to evade the payment of income tax as required under Section 115. Cf. Commissioner v. Fisher, 66 S.Ct. 686.

In the last analysis, this case turns on a dispute over proper accounting procedure for income tax collection purposes. We are not at liberty to treat as a question of law such a dispute. It is patently controlled by the Dobson rule.

Affirmed.

MARIS and GOODRICH, Circuit Judges, dissent for the reason set out in their dissenting opinion in the case of Bazley v. Commissioner, 3 Cir., 155 F.2d 237.

9 Cf. Helvering v. Griffiths, 1943, 318. U.S. .371, 63 S.Ct. 636, 87 L.Ed. 843.

10 26. U.S.C. (1940 ed.) Sec. 115 (b), 26 U.S.C.A. Int.Rev.Code, § 115 (b).