**SPIRELLA CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.**
**No. 273.**

Circuit Court of Appeals, Second Circuit.
June 19, 1946.

Paul P. Cohen, of Niagara Falls, N. Y., for petitioner.

Muriel S. Paul, of Washington, D. C., Sewall Key, Acting Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., for respondent.

Before L. HAND, AUGUSTUS N. HAND and CLARK, Circuit Judges.

PER CURIAM.

The petitioner seeks to expunge a deficiency in its income tax assessed against it for the year 1940, which the Tax Court has affirmed. The only question is whether it is entitled to take a deduction in its return for a loss in disposing of 390 shares of stock in its subsidiary—the Spirella Western Company, Inc. The facts were as follows. The Spirella Western Company was organized in 1933 with a capital stock of 1000 shares without par value. Nine hundred of these shares were issued to the taxpayer at $100 a share: that being the price fixed by the subsidiary's board of directors. In December, 1940, the petitioner still held 780 of these shares, and one, Grinager, held the rest. The Spirella Western Company had suffered losses of about $90,000 up to August 1, 1939, and its directors determined to stop manufacturing, and to become only a sales agent for the taxpayer. This made it desirable to dispose of such assets as were not required for its new duties; and between August 1, 1939 and April, 1940, the company had done so. On November 30, 1940, its assets consisted of about $22,000, subject to liabilities of about $2,500; and the directors thought that they could safely dispose of about $8,500 of its assets. Being advised by its counsel that it could not make such a distribution while its capital stock was impaired by the existing deficits, on December 11, 1940, the directors by a single resolution took the following steps. They declared that the shares should be reduced from no par value to $10 a share; that the capital of the corporation should thereupon be reduced to $5,000; and that this reduction should be effected by an acquisition by the company of half the new $10 shares. The resolution did not state the price to be paid for the shares. This resolution was carried out as follows. On December 21st the taxpayer and Grinager surrendered their outstanding no-par shares in the Spirella Western Company, and received in exchange the same number of $10 shares. Two days later the Spirella Western Company reduced its capital stock to $5,000;

and the taxpayer and Grinager each turned in one half of their new $10 shares for $17 a share. The shares so turned in were retired and canceled. The taxpayer separates the transactions into two parts; and claims as a loss the difference between the $100, paid for the original 390 no-par shares which it turned in on December 23, and the amount received—$17. The Commissioner takes the two transactions as one, which he regards as a "recapitalization" under § 112(g) (1) (D) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 112(g) (1) (E), and the loss as not to be recognizable under § 112(e).

Concededly there was a "recapitalization"; the question is how much is included. Both sides agree that, if it included only the exchange of no-par stock for $10 stock which took place on December 21st, the exchange then made was within § 112(b) (3). If that was the limit of the "recapitalization," the later sale to the Spirella Western Company of the new $10 shares was a partial distribution as defined by § 115(i), and the loss would be "recognized" under § 115(c). However, the Tax Court found that the transaction was single, and that it fell within § 112(e); and it is indeed difficult to understand how it could have reached any other conclusion, for a single purpose was plain from the outset. The resolution of December 11th contemplated not only a change in par value of the stock, but a retirement of half of the new shares after they had been issued. The fact that this purpose was effected by two steps: first, the exchange of the existing shares for the new shares, and then, a sale of half the new shares, could not disguise this; and the tax is to be determined by the character of the transaction as originally contemplated. Moreover, even though we were to disagree with the Tax Court's interpretation, it was a matter peculiarly within its power. The following passage from Dobson v. Commissioner, 320 U. S. 489, 502, 64 S.Ct. 239, 247, 88 L.Ed. 248, applies in so many words: "Whatever latitude exists in resolving questions such as those of proper accounting, treating a series of transactions as one for tax purposes, or treating apparently separate ones

as single for tax consequences, exists in the Tax Court, and not in the regular courts; when a court cannot separate the elements of a decision so as to identify a clear-cut mistake of law, the decision of the Tax Court must stand."

Order affirmed.