**SURVAUNT v. COMMISSIONER OF INTERNAL REVENUE.**

**NATIONAL TYPESETTING CORPORA-TION v. SAME (two cases).**

Nos. 13339–13341.

Circuit Court of Appeals, Eighth Circuit.

July 28, 1947.

Rehearing Denied Aug. 21, 1947.

Robert D. Abbott, of St. Louis, Mo. (Barksdale, Abbott & Thies, of St. Louis, Mo., on the brief), for petitioners.

Berryman Green, Sp. Asst. to the Atty. Gen. (Douglas W. McGregor, Asst. Atty. Gen., and Sewall Key, J. Louis Monarch and Helen Goodner, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before THOMAS, JOHNSEN, and RIDDICK, Circuit Judges.

THOMAS, Circuit Judge.

These three petitions to review decisions of the Tax Court all involve a determination of whether the "recapitalization" of an incorporated printing business in St. Louis, Missouri, in 1940 constituted a tax-free "reorganization" of a corporation within the meaning of § 112(g) (1) (D) of the Internal Revenue Code, 26 U.S.C. A. Int.Rev.Code, § 112(g) (1) (D), rather than a liquidation. The three cases involve the same transactions. They were consolidated for hearing before the Tax Court, resulting in a single transcript of the record, a single finding of facts and a single opinion (5 T.C. 665). They may accordingly be disposed of in a single opinion in this court.

The evidentiary facts, as found by the Tax Court, are not in dispute. The inferential facts and conclusions of the court only are controverted.

The National Typesetting Company (herein called the Company) was incorporated under the laws of Missouri in 1927 with 1000 shares of no par value stock. In July, 1940, petitioner, Richard H. Survaunt, and one Lee M. Hartwell owned all of the stock of the Company in equal shares. Hartwell died on July 19, 1940, and his widow, Eleanor L. Hartwell, was appointed executrix of his estate.

At the time of Hartwell's death he and petitioner Survaunt were indebted in equal amounts on their individual unpaid and past due promissory notes. As of December 30, 1940, the aggregate amount of unpaid principal of these notes was $29,534.-18; and the holders of the notes were insisting upon payment. Neither Survaunt nor the Hartwell estate had any assets, other than their stock in the Company, with which to pay.

Confronted with this situation the debtors decided to attempt to refund their individual notes with corporate notes issued by the Company. Their counsel, however, advised them that under the law of Missouri the Company could not assume their individual obligations. In order, therefore, to provide means to meet their indebtedness the stockholders decided to dissolve and liquidate the Company. Accordingly at a meeting of the stockholders held December 30, 1940, a resolution was unanimously adopted immediately dissolving the Company and distributing all of its property to the stockholders who assumed the Company's debts.

With the dissolution of the Company thus consummated, all the property received by the stockholders, less enough to pay the Company's debts, was conveyed by them by bill of sale to a new corporation which they had caused to be organized under the laws of Missouri on December 30, 1940, under the name of National Typesetting Corporation (herein called the Corporation), which had a certificate of authority to commence business on December 31, 1940. The Corporation was authorized to issue 4000 shares of capital stock without par value. After the transfer the Corporation without interruption continued with no change in policy to conduct the identical business previously conducted by the Company.

The agreed price of the assets conveyed to the Corporation by the bill of sale was $113,297.57, consisting of promissory notes aggregating $29,534.18, equaling the amount of Survaunt and Hartwell's individual indebtedness, and the 4000 shares of the Corporation's authorized no par value capital stock at an agreed value of $83,763.39.

The notes aggregating $29,534.18 called for in the bill of sale were never actually issued. After the organization of the Corporation Survaunt and Mrs. Hartwell did not arrive at a settlement with their creditors until July 21, 1941, when notes of the corporation in the amount of $27,967.80 and cash furnished by Survaunt and Mrs. Hartwell were used to satisfy the indebtedness to their creditors.

On August 8, 1941, the Probate Court having jurisdiction of the Hartwell estate, acting upon petition of Mrs. Hartwell, en-

tered an order "* * * that all right, title and interest of the Estate of Lee M. Hartwell, deceased, in * * * 2000 shares of the capital stock of National Typesetting Corporation" and "notes of said Corporation * * * be assigned, transferred and delivered to Eleanor L. Hartwell, in her individual capacity, in consideration of her assumption of the claims" against the Hartwell estate, "and in full release and discharge of this estate therefor, and in full settlement of the claim of Eleanor L. Hartwell for her year's support and absolute property. * * *"

In No. 13,339 the Tax Court sustained a deficiency in the income tax return of petitioner Survaunt for the taxable year ending December 31, 1940, in the amount of $74.95. The deficiency results from the denial by the Commissioner of Survaunt's claimed deduction of $891.23 for a net long term capital loss of $1,782.46 as a stockholder upon the liquidation of the Company on December 30, 1940. The Commissioner held and the Tax Court found that the transaction in which the Company's assets were transferred to the Corporation leaving the stockholders of the old Company in control of the new corporation was a reorganization under § 112(g) (1) (D) of the Internal Revenue Code and not a mere liquidation of the old Company.

The petitions in Nos. 13,340 and 13,341 are duplications of the same deficiency in the income tax of National Typesetting Corporation for the taxable year ending November 30, 1941, in that the appeal to the Tax Court in No. 13,341 was taken to correct an error in No. 13,340 resulting from the issuance of two notices of deficiency for the same tax deficiency. No. 13,340 was dismissed by the Tax Court, and the deficiency in No. 13,341 was sustained.

A petition for review was filed in No. 13,340 because § 1117(d) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 1117(d) provides that an order of dismissal by the Tax Court "shall be considered as its decision that the deficiency is the amount determined by the Commissioner." The parties agree that No. 13,340 should be reversed and remanded to the Tax Court with directions to enter a decision of no deficiency. It will be so ordered.

In No. 13,341 the Corporation in its income tax return for 1941 claimed a deduction of $5,567.01 for depreciation computed on the alleged cost or fair market value of $72,092.05 for the depreciable assets acquired for its stock and notes at the time of its organization. The Commissioner disallowed the deduction to the extent of $4,643.64 on the ground that such assets were acquired in connection with a reorganization within the meaning of § 112 (g) (1) (D) of the Code, and that the Corporation was required to take the basis for depreciation of its predecessor. The Corporation also deducted $1,900 as legal and accounting fees incurred in connection with its organization. The deduction was denied on the ground that such expenses should be capitalized and not deducted as current expenses. The total deficiency of the Corporation redetermined by the Tax Court was $965.30.

The Tax Court found that the whole transaction by which the Corporation succeeded to the Company's business was pursuant to a plan of reorganization; and, in its opinion, the Court declared that there was a "reorganization" and not a mere "liquidation" of the old Company; that considering all parts of the transaction together and not separately, the liquidation of the old Company assumes the character of only one step in an integrated transaction; that by means of the entire operation there was a "transfer" within the meaning of Internal Revenue Code, § 112(g) (1) (D), by the old "corporation of all or a part of its assets to another corporation" and "immediately after the transfer the transferor or its shareholders or both" were in control—that is, held 80 per cent of the stock, § 112(h),—of the transferee corporation; that "It does not change the result that the stockholders acted as a conduit for the delivery of the assets * * *; that there was a partial alteration of the derivative interests, which occurred independently of the plan and would have taken place irrespective of it * * *; or even that the stockholders had a personal,— as opposed to a corporate—reason for the

arrangement * * *"; and that "the expenses incurred for attorney's fees and related charges are to be capitalized, and are not deductible as current expense."

Petitioners concede that if there were a corporate reorganization within the meaning of the statute the decision of the Tax Court should be affirmed; but they contend that the Court erred in so deciding

1. Because the form of the transaction did not meet the requirements of the statute in that there was no transfer of its assets by one corporation to another corporation;

2. Because the requisite continuity of interest did not exist for the reason that the ownership of stock of the new corporation by the estate of Lee M. Hartwell, deceased, was transitory and should be disregarded; and

3. Because the reason for the transactions was found by the Tax Court to be personal as opposed to corporate, and, therefore, the corporate purpose required by the statute was absent.

■ Petitioners' first contention in brief is that the sole objective of the series of transactions outlined above was to supply the individual stockholders of the old Company with the assets necessary to pay their individual debts, and that, therefore, the liquidation of the old Company constituted a consummation of the plan. The initial plan of the stockholders, however, contemplated more than the distribution of the assets of the old Company. The Tax Court was warranted in finding that the plan as a whole contemplated not only the distribution of the assets of the old Company to its stockholders but the organization of a new corporation designed to carry on the identical business of the old Company without change of ownership and to issue to the stockholders its capital stock and its notes with which to pay their individual debts. The conclusion of the Tax Court was, therefore, inescapable that "The liquidation of the old Company then assumes the character of only one step in an integrated transaction."

■ That the transfer of the assets of one corporation to another through an intermediary will satisfy the requirements of § 112 is well settled. In Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775, the Supreme Court held that the transfer in bankruptcy of the assets of an old corporation to its creditors and by them to a new corporation constituted a reorganization within the meaning of the statute. And see Palm Springs Holding Corporation v. Commissioner, 315 U.S. 185, 62 S.Ct. 544, 86 L.Ed. 785; Commissioner v. Gilmore's Estate, 3 Cir., 130 F.2d 791; Muskegon Motor Specialties Co. v. Commissioner, 6 Cir., 134 F.2d 904; Spirella Co., Inc., v. Commissioner, 2 Cir., 155 F.2d 908. In any event the finding of the Tax Court that the liquidation of the old Company was but one step in an integrated transaction is a finding of fact and does not violate any law or regulation. The finding is therefore binding on this court. Dobson v. Commissioner, 320 U.S. 489, 502, 64 S.Ct. 239, 88 L.Ed. 248.

■ The second contention, that the requisite continuity of interest did not exist, is based upon the fact that the ownership of stock in the new Corporation which was vested in the Hartwell estate on December 31, 1940, was transferred to Eleanor L. Hartwell, widow of Lee M. Hartwell, on August 8, 1941. Petitioners argue that the ownership of the stock by the estate was transitory and should not be regarded. If disregarded, then there was lacking continuity of the interest of Lee M. Hartwell or his estate in the new Corporation.

The short answer to this contention is that the transfer of this stock to Eleanor L. Hartwell was not a part of the plan of reorganization at the time the plan was conceived and executed. The "tax is to be determined by the character of the transaction as originally contemplated." Spirella Co., Inc., v. Commissioner, 2 Cir., 155 F.2d 908, 909. Further, it is not logical to contend that the holding of the stock for more than seven months by the estate was transitory and at the same time to argue that the holding of the title to the assets of the old Company by the estate from December 30th until December 31st was not transitory. The distinction between the two transfers for tax purposes is that

the transfer in 1940 was a step in a plan of reorganization while the transfer of the stock in 1941 was not. The first step was intended to be retroactive while the second was not. See Wilgard Realty Co. v. Commissioner, 2 Cir., 127 F.2d 514. Eleanor L. Hartwell had no proprietary interest in the old Company, while the Hartwell estate did have such an interest. Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 184, 62 S.Ct. 540, 86 L Ed. 775; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. In the first transaction it was not intended that the assets of the old Company should remain in the hands of the stockholders but that they should transfer them to the new corporation. The stockholders in the transfer of the assets acted as a mere conduit, Minnesota·Tea Co. v. Helvering, 302 U.S. 609, 614, 58 S.Ct. 393, 82 L.Ed. 474, while the transfer of the stock to Eleanor L. Hartwell was not contemplated in December, 1940.

Petitioners' third proposition, namely, that there was no reorganization as defined in § 112(g) (1) (D) of the Code because the reason for the transaction was found by the Tax Court to be personal as opposed to corporate, presents the serious question involved here.

The finding of the Tax Court referred to reads: "It was decided by the stockholders of the [old] Company that it would be necessary to dissolve and liquidate it in order to provide petitioner [Survaunt] and the Hartwell estate with the means to meet their indebtedness to the Kiely and Berndsen trusts."

In view of this finding petitioners contend that the Tax Court erred in the conclusion expressed in its opinion that "It does not change the result that the stockholders acted as a conduit for the delivery of the assets; * * * or even that the stockholders had a personal,—as opposed to a corporate—reason for the arrangement." Citing Lyon, Inc., v. Commissioner, 42 B.T.A. 1094, affirmed on other grounds in Lyon, Inc., v. Commissioner, 6 Cir., 127 F.2d 210.

Petitioners rely principally upon U. S. Treasury Regulation 103, sec. 19.112(g)–1

and–2; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Bazley v. Commissioner, 3 Cir., 155 F.2d 237; and Adams v. Commissioner, 3 Cir., 155 F.2d 246.

Subdivision (g)–2 of the regulations provides that "* * * the transaction, or series of transactions, embraced in a plan of reorganization * * * must be undertaken for reasons germane to the continuance of the business of a corporation a party to the reorganization."

In Gregory v. Helvering, supra [293 U. S. 465, 55 S.Ct. 267], the Supreme Court, speaking of corporate reorganizations within the meaning of the statute involved herein, said:

"* * * the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended. * * *

"When subdivision (B) speaks of a transfer of assets by one corporation to another, it means a transfer made 'in pursuance of a plan of reorganization' section 112(g) of corporate business; and not a transfer of assets by one corporation to another in pursuance of a plan having no relation to the business of either, as plainly is the case here."

■ We think the petitioners fail correctly to interpret the opinion of the Supreme Court in the Gregory case. The opinion carefully points out that the character of a reorganization proceeding under § 112(g) depends not upon the motive of the stockholders but upon "what was done." The plan of reorganization must comprehend, and the new corporation created, must when consummated carry on in whole or in part the corporate business of the old corporation. The motive of the stockholders is immaterial, if a reorganization of the corporate business is in fact accomplished. In the Gregory case the new corporation did not comply with these requirements of the statute. It never transacted any business connected with or related to the business enterprise carried on by the old corporation. In the present cases the situation was entirely different. The new Corporation here not only took title to the assets of the old Company, it continued to carry

on the same identical corporate business which had been operated by the Company since its organization in 1927. It would in fact be difficult to conceive the reorganization of a corporation in which the stockholders did not have some "personal reason" for effecting a change in the corporate affairs.

■ The "business purpose" requirements for corporate reorganizations under § 112(g) are discussed at length and the cases reviewed by Judge Mahoney in Lewis v. Commissioner, 1 Cir., 160 F.2d 839, 843, where the conclusion is reached that "Usually * * * the continuance of the business in the hands of the transferee (or by a reorganized company in the case of a recapitalization) is deemed sufficient indication of the required 'business purpose' and the Treasury Regulations * * * [103, § 19.112(g)–1] list this as a requirement of the statutory reorganization." And see Lyon, Inc., v. Commissioner, supra, 127 F.2d at page 213.

The Bazley case, 3 Cir., 155 F.2d 237, relied upon by the petitioners grew out of the recapitalization of a family corporation having an earned surplus of $855,783.82. Under a plan authorized by amendment to the Articles of Incorporation the stockholders turned in their old shares having a par value of $100 each and received in exchange for each share five new shares of no par value, but of a stated value of $60, and new debenture bonds having a total face value of $400,000, payable in 10 years but callable at any time. The Commissioner charged the stockholders as income the full value of the debentures. The stockholders contended that the transaction was a tax-free reorganization and that the debentures were "securities in a corporation a party to a reorganization", "exchanged solely for stock or securities in such corporation" "in pursuance of the plan of reorganization", and that as such no gain is recognized for income tax purposes under § 112(g) (1) (E) and § 112(b) (3). The Tax Court found that the recapitalization had no legitimate corporate business purpose and was not, therefore, a reorganization under the statute. The distribution of debentures, the Court held, was a disguised dividend taxable as earned income under §§ 22(a) and 115(a) and (g). The Third Circuit Court of Appeals with two judges dissenting affirmed. The Supreme Court granted certiorari and, since the submission of this case, affirmed with two Justices dissenting. Bazley v. Commissioner, 67 S.Ct. 1489, 91 L.Ed. —. The Adams case, 3 Cir., 155 F.2d 246 involved the same questions as the Bazley case and was decided the same way.

In affirming the Bazley case the Supreme Court said [67 S.Ct. 1491]: "In the case of a corporation which has undistributed earnings, the creation of new corporate obligations which are transferred to stockholders in relation to their former holdings, so as to produce, for all practical purposes, the same result as a distribution of cash earnings of equivalent value, cannot obtain tax immunity because cast in the form of a recapitalization-reorganization."

The Court also pointed out that "the form of a transaction as reflected by correct corporate accounting opens questions as to the proper application of a taxing statute; it does not close them." And citing Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 247, 88 L.Ed. 248, the Court observed that where the question turns on details of corporate affairs judgment must be left to the Tax Court.

Applying these principles to the cases under consideration we think the decision of the Tax Court is conclusive. Here the balance sheet of the old Company as of December 30, 1940, showed fixed or depreciable assets as follows: Cost, $72,311.54; reserve for depreciation, $62,639.33; net, $9,672.21. The balance sheet of the new Corporation as of December 31, 1940, set up on the basis of the agreed price for the transfer of the assets of the old Company for stock and notes, showed fixed or depreciable assets in the amount of $72,092.05. The Tax Court held that the transaction constituted a tax-free reorganization and that the new Corporation was required to take the basis for depreciation of its predecessor. We are unable "to separate the elements" of the Tax Court's decision "so as to identify a clear-cut mistake of law." Dobson v. Commissioner, supra. In this instance the new Corporation functioned as a business corporation.

as was intended when the plan was conceived. It carried on the business of its predecessor without a break in its continuity. The plan contemplated a living, active corporation for the purpose of carrying on a corporate business indefinitely. It seems clear to us that the Tax Court complied strictly with the teaching of the Gregory case when it considered "what was done" as a whole including the complete plan and the entire series of transactions making it effective, and not merely the "personal" reason of the stockholders when the plan was initiated. Lyon, Inc., v. Commissioner, supra, 127 F.2d at page 213. The Tax Court did not predicate its conclusion that there was a reorganization upon any single finding of fact nor a single step in the transaction. It reached its conclusion by following the rule "that requires all parts of the transaction to be considered together rather than separately." Opinion 5 T.C. 665, 671; Helvering v. Alabama Asphaltic Limestone Co., supra.

We conclude that there is a rational basis in law for the decision of the Tax Court that a reorganization occurred when the series of undisputed transactions are considered as an integrated whole. The decisions of the Tax Court in No. 13,339 and in No. 13,341 are accordingly affirmed, and the decision in No. 13,340 is reversed with directions to enter a decision of no deficiency therein.