ETHEL K. LESSER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF JOSEPH LOW, ETHEL K. LESSER, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 55824, 55825. Filed May 23, 1956.

*H. Cecil Kilpatrick, Esq.*, for the petitioners.
*William Schwerdtfeger, Esq.*, for the respondent.

310

OPINION.

MULRONEY, *Judge:* Respondent contends that the various transactions through which the three apartment buildings owned by Capital were conveyed to two new corporations controlled by the same stockholders who controlled Capital, and which resulted in the dissolution of the old corporation, Capital, with cash and other assets being distributed to the stockholders, must be viewed as a whole and, so viewed, constitute a reorganization within the meaning of section 112 (g) (1) (D) of the 1939 Internal Revenue Code. We believe that the various transactions that occurred here were pursuant to a plan of reorganization. It is not necessary that a plan of reorganization be embodied in a formal written document. *James G. Murrin*, 24 T. C. 502. We may examine the first and the last in the series of transactions in order to decide whether or not a reorganization was effected. *William M. Liddon*, 22 T. C. 1220, reversed on another issue 230 F. 2d 304 (C. A. 6, 1956). Here, all the transactions took place within a very short period of time. On November 17, 1950, the stockholders of the old corporation filed a consent to its dissolution and just prior to that two new corporations had been formed by the same stockholders; on November 20, 1950, all the various corporate resolutions were passed and the contracts enacted by all interested parties, i. e., the old corporation, the two new corporations, and the petitioner who was sole

stockholder of both the old and the new corporations; also the real estate properties were conveyed to the two new corporations on that same date; and the cash and other liquid assets of the old corporation were distributed to the petitioner, as sole stockholder, on November 20, November 30, and December 19, 1950. From all the evidence, we are convinced that the first of these several transactions was taken only with a view toward the last, as each of the various transactions was made in pursuance of a plan previously agreed upon.

The requirements for a reorganization under section 112 (g) (1) (D) are met here. That section defines a reorganization as "a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred." Section 112 (h) of the 1939 Internal Revenue Code defines "control" as 80 per cent stock ownership, and such control is met here, since the petitioner, individually and as trustee, was sole stockholder of both the old and the new corporations involved here.

There is no dispute that the requisite business purpose existed here. The business of Capital was carried on by the two new corporations. Moreover, there can be a liquidation of the old corporation incidental to the reorganization, *Bard-Parker Co.*, 18 T. C. 1255, affd. 218 F. 2d 52; *Estate of John B. Lewis*, 10 T. C. 1080, affd. 176 F. 2d 646. The motives of the stockholders are immaterial if there has been, in fact, a reorganization. *Pebble Springs Distilling Co.*, 23 T. C. 196, affd. 231 F. 2d (C. A. 7, 1956); *Richard H. Survaunt*, 5 T. C. 665, affirmed on this point 162 F. 2d 753.

We need look no further than petitioner's own evidence to find the distribution in this case was part of a plan of reorganization. She said it was. She said she had decided to liquidate Capital and operate its properties by two new corporations—which new corporations she formed before the liquidation so they could receive the title to the properties. Petitioner's counsel makes much of the fact that she entered into no binding contract with anyone to have the properties received in liquidation from Capital transferred to the new corporations. Counsel points out she was free to accept the properties from the liquidation and not have them transferred to the two new corporations. In short, she was free to change her mind and not carry out the plan she had decided upon prior to the liquidation. But she was really the sole stockholder of Capital. There was no occasion for her to agree with anyone else before one can say the plan was adopted. Such an agreement for the plan of reorganization might be necessary where there are many stockholders and an agreement between them as to the plan is necessary before it can be said the plan was adopted. The adoption of the plan here rests on the testimony of petitioner that

she decided upon it and on the acts of the corporate officers and the corporation records showing it was carried out.

Petitioner makes the argument that there can be no reorganization here under section 112 (g) (1) (D) because the real property of Capital, the old corporation, was conveyed first to the sole stockholder who in turn conveyed such property to the two new corporations, instead of being conveyed directly from the old to the new corporations. Actually, the argument is not factually correct for there was not a conveyance of the title to the realty from Capital to petitioner. But in any event, the agreement to convey to petitioner's nominee would make her no more than a go-between from the old corporation and her nominees, the two new corporations. A similar argument was rejected by this Court in *Bard-Parker Co., supra*, where we said that the liquidating directors there involved were no more than a conduit between the old and the new corporations, and, as such, did not preclude a reorganization. See also *James G. Murrin, supra; Richard H. Survaunt, supra*. The same is true here. Petitioner merely directed the old corporation to convey the three parcels of real property to the two new corporations. If title in this real property ever vested in the petitioner, it was only nominally, and at best the petitioner was little more than a conduit in achieving the end result. It is apparent from all the evidence that the plan was to convey the real property to the two new corporations, and there is no indication that the petitioner was ever to have anything more than a bare legal title.

Under section 112 (b) (3) of the 1939 Internal Revenue Code, no gain or loss is recognized where "stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to a reorganization." Gain is recognized, however, where the exchange is not solely in kind, section 112 (c) (1) of the 1939 Internal Revenue Code,[1] and under section 112 (c) (2)[2]

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.—

(c) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—

(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5), or within the provisions of subsection (1), of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph or by subsection (1) to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(c) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—

\*      \*      \*      \*      \*      \*      \*

(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property.

this gain may, under some circumstances, be treated as a taxable dividend. Petitioner argues that the exchanges involved here do not fall within section 112 (b) (3) and consequently sections 112 (c) (1) and (2) never come into play. Petitioner contends that she acquired the stock in the new corporations in exchange for the properties conveyed by her to them, not in exchange for her stock in Capital, the old corporation. This old stock, petitioner argues, was surrendered to Capital in exchange for cash and other liquid assets, and then canceled by Capital. We do not agree. This is merely another facet of petitioner's position that we must atomize the several transactions and view each transaction in the series separate and apart. It is proper for this Court to consider all the transactions together rather than separately. *Helvering* v. *Limestone Co.*, 315 U. S. 179; *William M. Liddon, supra*, and where, as here, we hold that a reorganization did take place, the exchange by the petitioner of stock in the old corporation was for the stock in the two new corporations.

Petitioner, in her individual capacity, received in the reorganization cash in the amount of $110,756.72, in addition to stock in the two new corporations, and, as trustee, received cash in the amount of $97,019.63 and notes receivable amounting to $13,737.08, in addition to the stock. There was a total gain realized by petitioner, as individual and as trustee, of $24,518.07, and under section 112 (c) (1) this gain is recognized in full. Section 112 (c) (2) taxes this gain if the distribution to the petitioner "has the effect of the distribution of a taxable dividend." No distinction is made by this section between liquidating dividends and ordinary dividends. *William M. Liddon, supra; John S. Woodward*, 30 B. T. A. 1216. Here, the old corporation, Capital, had earnings and profits of $169,695.40 for the years from 1941 to November 20, 1950. In all this time, Capital paid no dividends. The petitioner was in complete control of the old corporation and was also in complete control of the two new corporations. We hold that the distribution of the cash and the notes receivable to petitioner was pursuant to a plan of reorganization and said distribution has the effect of a distribution of a taxable dividend and the gain to the petitioner, individually and as trustee, was taxable under section 112 (c) (2) of the 1939 Internal Revenue Code. *William M. Liddon, supra.*

As earlier stated respondent computed the deficiency under section 115 (g) (1) of the 1939 Internal Revenue Code [3] which would render

---

[3] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(g) REDEMPTION OF STOCK.—

(1) IN GENERAL.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

the distribution of all of Capital's earnings and surplus taxable as a dividend. This would result in a much higher tax and respondent now concedes in his brief that "the distributions fall within the reorganization, and the amount of the dividend should be computed under section 112 (c) (2)." We agree.

*Decision will be entered under Rule 50.*