E. P. RAYMOND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86251. Promulgated February 25, 1938.

*Howard C. Beck, C. P. A.*, for the petitioner.
*E. C. Adams, Esq.*, for the respondent.

424

425

OPINION.

ARNOLD: In order for the petitioner to meet the requirements of the statute the loss must have actually been "sustained." Section 23 (e) of the Revenue Act of 1932; *Alfred Hafner*, 31 B. T. A. 338; *Forbes* v. *Commissioner*, 62 Fed. (2d) 571. This requires proof of disposition by sale or exchange, or of some "identifiable event" establishing worthlessness. *Howard* v. *Commissioner*, 56 Fed. (2d) 781; *Commissioner* v. *R. J. Darnell, Inc.*, 60 Fed. (2d) 82; *Commissioner* v. *Cleveland Trinidad Paving Co.*, 62 Fed. (2d) 85; *Gowen* v. *Commissioner*, 65 Fed. (2d) 923; certiorari denied, 290 U. S. 687. Proof of mere shrinkage in value will not suffice. *Daniel J. Ryan*, 19 B. T. A. 52.

Petitioner argues that the common stock owned by him in the old company had no value on August 25, 1933, that under the plan of reorganization the common stock was wiped out and the only thing he received in place of the stock was an option to purchase an equivalent number of shares of the new corporation at $115 per share, and that said option is not "securities" within the intent or meaning of that word as used in section 112 (b) (3) of the Revenue Act of 1932.[1] The parties at the hearing conceded there was a reorganization.

We are satisfied that the transaction by which the petitioner surrendered his stock in the old company and received rights or options to purchase stock in the new company was a "reorganization" within the meaning of the statute. Counsel's opening remarks at the hearing and the petitioner's exhibits indicate that there was a statutory reorganization. The petitioner, however, argues that the provisions of section 112 (b) (3) are inapplicable because his option to purchase shares in the new corporation does not fall within the statutory term "securities."

---

[1] SEC. 112 (b) (3). * * * No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

With this we are unable to agree. The books are replete with definitions more than broad enough to include the right which petitioner received within the meaning of the word "securities." The definition of a security in Webster's New International Dictionary is, "An evidence of debt or of property, as a bond, stock certificate, or other instrument, etc.; a document giving the holder the right to demand and receive property not in his possession." This petitioner exchanged stock in the old corporation pursuant to the plan of reorganization which was introduced in evidence as Exhibit 2. An integral part of said plan is the section thereof entitled "Issuance and Distribution of New Securities", which specifically provided for the issuance of (a) common shares of the new corporation, (b) options to purchase common shares of the new corporation for $115 at any time (without limit), and (c) options to purchase common shares of the new corporation for $155 on or before December 31, 1942. The aforesaid securities, as denominated by the plan of reorganization, were to be exchanged for the outstanding preferred and common stock of the old company and options to purchase stock in the old corporation. In view of these circumstances we are of the opinion that the right or option which petitioner acquired in exchange for his stock falls squarely within the accepted definition of "securities" and also within the spirit and intendment of the reorganization provisions of the statute. Cf. *Daniel H. Burnham*, 33 B. T. A. 147; affd., 86 Fed. (2d) 776; certiorari denied, 300 U. S. 683.

As was said by the court in *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; certiorari denied, 288 U. S. 599, "The word, 'securities' was used [in 203 (e)] so as not to defeat the exemption in cases where the interest of the transferor was carried over to the new corporation *in some form*." The "form" in which this petitioner's right "was carried over to the new corporation" was the right, unlimited as to time, to demand the issuance to him of 100 shares of stock of the new corporation at $115 a share, a right which we have already said yielded him $107 in the following year.

This case is distinguishable from *Estate of C. T. Grant*, 36 B. T. A. 1233, and the case of *Union C. DeFord*, 19 B. T. A. 339, as in each of those cases the old stock was found and determined to be worthless in the taxable year and the right to participate in the new corporation was found to be without value. Such is not the case here.

In addition to the foregoing considerations we are of the opinion that we would be forced to the same conclusion because of the prima facie presumption of correctness that attaches to the respondent's determination. In order to overcome this presumption of correctness the petitioner must adduce evidence showing the worthlessness of his investment. Petitioner testified that he considered his investment

only "practically" worthless in the taxable year; he did not testify that his investment was worthless. He alleges in his petition that he sold his rights in 1934 for $107, which is certainly adverse to his contention that the rights were worthless in 1933. Furthermore, petitioner submitted no evidence that the balance sheets in his exhibits fail properly to reflect the financial condition of the old and new company. In our opinion these exhibits substantiate the respondent's determination that the petitioner's investment had some value during the taxable year.

For the above and foregoing reasons we are of the opinion that the respondent's determination must be approved.

*Judgment will be entered for the respondent.*