WILLIAM H. BATEMAN AND ANNABELLE P. BATEMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 93310. Filed May 27, 1963

*Sydney C. Winton* and *Sherwin Kamin*, for the petitioners.
*Alvin C. Martin*, for the respondent.

### OPINION

SCOTT, *Judge:* Respondent determined a deficiency in petitioners' income tax for the calendar year 1958 in the amount of $11,212.36.

The issues for decision are:

(1) Should gain to petitioners be recognized under the provisions of section 356(a)(1) of the Internal Revenue Code of 1954 to the extent of the fair market value of common stock purchase warrants of the Symington Wayne Corp. which were received by William H. Bateman in addition to common stock of that corporation in exchange for common stock of the Wayne Pump Co. upon its merger into Symington Wayne Corp.?

(2) Did the exchange have the effect of the distribution of a dividend within the meaning of section 356(a)(2) of the Internal Revenue Code of 1954?

All of the facts have been stipulated and are found accordingly.

William H. Bateman and Annabelle P. Bateman, husband and wife, residing in Salisbury, Md., filed a joint income tax return on the cash basis of accounting for the calendar year 1958 with the district director of internal revenue, Baltimore, Md. On March 12, 1958, William H. Bateman (hereinafter referred to as petitioner) was the owner of 7,350 shares of common stock of the Wayne Pump Co. which he had acquired more than 6 months prior to that date. The Wayne Pump Co. was a Maryland corporation incorporated in 1928. Its only class of outstanding stock on March 12, 1958, was common stock. On March 12, 1958, the Wayne Pump Co. was merged into the Symington-Gould Corp. Symington-Gould Corp., the surviving corporation upon the merger with its name changed to Symington Wayne Corp., was a Maryland corporation incorporated in 1924. The only class of stock of Symington-Gould Corp. outstanding at the date of the merger was common stock. The merger was a tax-free reorganization within the terms of section 368(a) of the Internal Revenue Code of 1954 to which both the Wayne Pump Co. and Symington Wayne Corp. were parties.

Pursuant to the terms of the merger, each shareholder of the Wayne Pump Co. was entitled to receive 2¼ shares of Symington Wayne Corp. common stock and one stock purchase warrant for each share of the Wayne Pump Co. stock surrendered. The warrants were assignable and each warrant entitled the holder, subject to the conditions stated therein, to purchase 1 share of common stock of Symington Wayne Corp. at any time during the 10-year period from June 1, 1958, to May 31, 1968, at $10 per share if purchased before June 1, 1963, and at $15 per share if purchased thereafter. The corporation was required to reserve from its authorized and unissued common stock a sufficient number of shares to provide for the then outstanding warrants. The provisions of the merger agreement with respect to the warrants were set forth in substance on the face of the stock-purchase warrant certificates and were in part as follows:

Notwithstanding any other provisions hereof, in the event of the liquidation, dissolution or winding up of the affairs of the Corporation (excluding any merger or consolidation), the right to exercise the Warrants shall terminate at the close of business on the fourth full business day before the earliest date fixed for the payment of any distributable amount on the Common Stock of the Corporation. At least 30 days' notice of such payment date shall be given to the registered holders of the Warrants determined as of the date of notice.

In the event that:

(a) The shares of Common Stock at any time outstanding shall be subdivided, by reclassification, recapitalization or otherwise, into a greater number of shares without the actual receipt by the Corporation of any consideration for the additional number of shares so issued, or the Corporation shall declare a dividend on Common Stock payable in Common Stock, or the number of shares

of Common Stock at any time outstanding shall be reduced, by reclassification, recapitalization, reduction of capital stock or otherwise; or

(b) The outstanding shares of Common Stock shall be reclassified or changed other than in a manner referred to in clause (a) of this paragraph; or

(c) The Corporation shall merge or consolidate with or into another corporation or shall sell its property as an entirety or substantially as an entirety, the number of shares issuable upon the exercise of Warrants shall be adjusted, to the nearest one-hundredth shares of Common Stock, so that each holder of Warrants then outstanding shall have the right thereafter, so long as the right to exercise same shall exist, to purchase the kind and amount of securities or property, if any, which the holder would have received had the Warrants been exercised in the same manner and to the same extent immediately prior to any such event. In the event that any adjustment results in the inclusion of a fraction of a share, no fractions of shares of Common Stock shall be issued upon the exercise of Warrants, but in lieu thereof the Corporation shall pay cash based on current market values as determined by resolution of the Board of Directors of the Corporation or by the Treasurer of the Corporation pursuant to such resolution (which determination shall be conclusive). Upon each such adjustment pursuant to this paragraph, a computation and summary thereof shall be filed by an officer of the Corporation at the office of the Warrant Agent.

In the event that the Corporation shall offer any shares of Common Stock, or securities convertible into Common Stock to the holders of the Common Stock as a class for subscription, each registered holder of Warrants then outstanding shall have the same right to subscribe for the same number of shares of Common Stock or amount of such securities, within the same period of time, and at the same price, as he would have been entitled to subscribe for had the Warrants been exercised immediately prior to any such event. The date for the determination of registered holders of Warrants entitled to such subscription rights shall be the same as the record date for the determination of the holders of Common Stock entitled thereto.

Until the valid exercise of the Warrants represented hereby the holder hereof as such shall not be entitled to any rights of a stockholder of the Corporation.

Pursuant to the terms of the merger, petitioner on March 12, 1958, received 16,537 shares of common stock of Symington Wayne Corp. and 7,350 stock purchase warrants in exchange for his 7,350 shares of common stock of the Wayne Pump Co.

On March 12, 1958, the fair market value of each of the 7,350 warrants received by petitioner in the exchange was $2.875 making a total fair market value of $21,131. Since March 13, 1958, the stock purchase warrants have been traded on the American Stock Exchange.

On March 12, 1958, the fair market value of each of the 16,537 shares of common stock of Symington Wayne Corp. received by petitioner in the exchange was $8.375 making a total fair market value of $138,-497.38. Prior to the merger the stock of both the Symington-Gould Corp. and the Wayne Pump Co. was traded on the New York Stock Exchange and since the merger the stock of Symington Wayne Corp. has continued to be traded on the New York Stock Exchange.

The cost and basis of the 7,350 shares of the Wayne Pump Co. common stock in the hands of petitioner was $82,400.

For the purpose of section 356(a)(2) of the Internal Revenue Code of 1954,[1] petitioner's ratable share, at the time of the merger, of the undistributed earnings and profits of the Wayne Pump Co. accumulated after February 28, 1913, was in excess of $21,131, the fair market value on March 12, 1958, of the warrants received by petitioner.

On March 12, 1958, the earned surplus and undivided profits of the Wayne Pump Co. accumulated after February 28, 1913, was $6,654,386.

Petitioner sold 4,000 of his 7,350 warrants during the period from September 22 to October 9, 1958, for a total of $28,437.50.

Petitioner attached to his income tax return for the calendar year 1958 an "Appendix A," which he entitled "Statement Required By Income Tax Reg. 1.368–3(b)," in which he set forth the fact of his exchange of his stock in the Wayne Pump Co. for stock and stock purchase warrants in Symington Wayne Corp. Petitioner reported no gain from this exchange. On his return petitioner reported a long-term capital gain in the amount of $21,894 from the sale of 4,000 warrants of Symington Wayne Corp. which amount was the difference between a sales price of $28,438 and basis of $5,937.

Respondent in his notice of deficiency increased petitioner's ordinary income as reported by $21,131, denominated as dividend income, with the following explanation:

It is held that on the exchange of 7,350 shares of Wayne Pump Company stock for 16,537 shares of Symington Wayne Corporation stock and 7,350 warrants to purchase additional shares of Symington Wayne Corporation stock gain is recognized to the extent of the fair market value of the warrants received. It is further held that the gain recognized is taxable as a dividend. Since the fair market value of the warrants received by you was $2.875 each, your taxable income is increased in the amount of $21,131.00 (7,350 × $2.875).

Respondent in his notice of deficiency decreased the long-term capital gain as reported by petitioner by $2,781 as a result of using as a basis for the 4,000 warrants sold by petitioner the far market value of those warrants on the date of issue plus the expense of sale instead of the basis claimed by petitioner. Respondent computed petitioner's dividends-received credit by including in dividends received to which the 4-percent credit was applied, the $21,131 representing the fair market value of the warrants on March 12, 1958.

Petitioner contends that the stock purchase warrants he received constitute "stock or securities" within the meaning of section

[1] All references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.

354(a)(1).[2] Petitioner argues that the warrants are stock within the meaning of that section, but that if these warrants are held to be securities, the limitations in section 354(a)(2)[2] do not apply because securities within the meaning of section 354(a)(2) are principal-amount securities. The warrants petitioner received have no principal amount. Petitioner contends, in the alternative, that even if the warrants constitute other property within the meaning of section 356, the distribution of the warrants does not have the effect of a dividend, and that the gain to be recognized is capital gain.

Respondent contends the stock purchase warrants are neither stock nor securities within the meaning of section 354(a)(1), but rather constitute other property within the meaning of section 356. Respondent asserts the distribution of the warrants has the effect of a dividend within the meaning of section 356(a)(2) and that the amount of the fair market value of the warrants on March 12, 1958, should be taxed to petitioner as a dividend. Alternatively, respondent argues that should the warrants be held to be securities within the meaning of section 354(a)(1), nevertheless, due to the limitations in section 354(a)(2), they would constitute other property under section 356.

Section 354(a)(1) where applicable permits a taxpayer to exchange stock or securities of a corporation a party to a reorganization solely for stock or securities in such corporation or in another corporation a party to the reorganization without the recognition of gain or loss. In construing the provisions of the Revenue Act of 1928 comparable to the provisions of sections 354(a)(1) and 356 of the Internal Revenue Code of 1954,[3] the Supreme Court, in *Groman* v. *Commissioner*, 302 U.S. 82, 84, stated the purpose of these provisions as follows:

where, pursuant to a plan, the interest of the stockholders of a corporation continues to be definitely represented in substantial measure in a new or dif-

---

[2] SEC. 354. EXCHANGES OF STOCK AND SECURITIES IN CERTAIN REORGANIZATIONS.

(a) GENERAL RULE.—

(1) IN GENERAL.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

(2) LIMITATION.—Paragraph (1) shall not apply if—

(A) the principal amount of any such securities received exceeds the principal amount of any such securities surrendered, or

(B) any such securities are received and no such securities are surrendered.

[3] Sec. 112(b)(3) and 112(c)(1), Revenue Act of 1928, 45 Stat. 791. Sec. 112(b)(3) is identical with sec. 354(a)(1) of the 1954 Code. The Court summarized the provisions of sec. 112(c)(1) as follows: "If the transaction involves the receipt of such stock or securities and 'also of other property or money' then the gain, if any, is to be recognized in an amount not in excess of the sum of such money and the fair market value of such other property." [*Groman* v. *Commissioner*, 302 U.S. 82 (1937)]

ferent one, then to the extent, but only to the extent, of that continuity of interest, the exchange is to be treated as one not giving rise to present gain or loss. If cash or "other property," that is, property other than stock or securities of the reorganized corporations, is received, present gain or loss must be recognized. * * *

If section 112 (b) (3) of the Internal Revenue Code of 1939 applied to the exchange here involved, a holding that the stock purchase warrants were securities would dispose of this case favorable to petitioner. Certainly, the purpose of the statute requiring that the taxpayer have a continuing interest in the surviving corporation is met under the facts here present. However, section 354 (a) (2), a new provision of the 1954 Code, places a limitation on the applicability of the non-recognition provisions of section 354 (a) (1) making those provisions inapplicable under certain circumstances where a taxpayer received securities (other than stock) of a corporation a party to the reorganization in an exchange otherwise within the provisions of section 354 (a) (1). Therefore, under the provisions of section 354, unless the warrants are considered to be stock, the question still remains whether section 354 (a) (1) is not made inapplicable by the provisions of section 354 (a) (2) (B) since petitioner exchanged no warrants for the warrants he received. Section 354 (a) (1) is made inapplicable by section 354 (a) (2) (B) if "any such securities are received and no such securities are surrendered."

Respondent, in his regulations,[4] construes this provision to mean that section 354 (a) (1) applies only where stock is surrendered for stock, securities are surrendered for securities, or securities are surrendered for stock and securities. This same interpretation was placed upon this section in a footnote in *Carlberg* v. *United States*, 281 F. 2d 507, 509 (C.A. 8, 1960), which stated as follows:

[3] The meaning of the term "securities" in section 354 (a) and the qualification of the Certificates as "securities", if they are not "stock", are not factors in the case. This is because the Maryland and Missouri stockholders surrendered only stock and thus, in contrast to section 112 (b) (3) of the 1939 Code, 26 U.S.C.A. (I.R.C. 1939) section 112 (b) (3), the limitation of section 354 (a) (2) (B) applies.

---

[4] Income Tax Regs.

Sec. 1.354—1. Exchanges of stock and securities in certain reorganizations.

(a) Section 354 provides that under certain circumstances no gain or loss is recognized to a shareholder who surrenders his stock in exchange for other stock or to a security holder who surrenders his securities in exchange for stock. Section 354 also provides that under certain circumstances a security holder may surrender securities and receive securities in the same principal amount or in a lesser principal amount without the recognition of gain or loss to him. The exchanges to which section 354 applies must be pursuant to a plan of reorganization as provided in section 368 (a) and the stock and securities surrendered as well as the stock and securities received must be those of a corporation which is a party to the reorganization. * * *

* * * * * * *

(b) Except in the case described in subsection (c), section 354 is not applicable to an exchange of stock or securities if a greater principal amount of securities is received than

We think that respondent's regulations correctly interpret section 354 (a) (2) (B) as making section 354 (a) (1) inapplicable if only stock is surrendered and stock and securities are received. There is nothing in section 354 (a) (2) (B) which limits its application to principal amount securities as petitioner contends. Since petitioner in the instant case surrendered only stock, if the warrants he received are considered not to be stock but to be securities, section 354 (a) (1) is inapplicable to the exchange except to the extent provided in section 356 (a).[5] We will therefore confine our consideration to whether the warrants constitute stock within the meaning of section 354 (a)·(1).[6]

In *Helvering* v. *Southwest Corp.*, 315 U.S. 194 (1942), warrants to purchase voting stock were held not to be voting stock. In *E. P. Raymond*, 37 B.T.A. 423 (1938), we held stock purchase warrants to be securities and in so doing apparently accepted as a fact that these securities were not stock. The Court of Claims in *Goodhue* v. *United States*, 17 F. Supp. 86 (1936), held stock rights not to constitute stock but to represent a contractual right to purchase stock. In *Carlberg* v. *United States*, *supra*, in holding certain certificates of contingent interest to represent stock, the court considered the rights connected with such certificates to differ from the "contractual" rights of the warrants involved in *Helvering* v. *Southwest Corp.*, *supra*. One of the major differences which the taxpayer had urged and the court apparently approved was that the warrants in the *Southwest* case gave no rights in the stock to the holder until a payment for the stock was made,

---

the principal amount of securities the recipient surrenders, or if securities are received and the recipient surrenders no securities. * * *

&ast;     &ast;     &ast;     &ast;     &ast;     &ast;     &ast;

(d) The rules of section 354 may be illustrated by the following examples:

&ast;     &ast;     &ast;     &ast;     &ast;     &ast;     &ast;

*Example (2).* Pursuant to a reorganization under section 368(a) to which Corporations X and Y (which are not railroad corporations) are parties, B, a shareholder in Corporation X, surrenders all his stock in X for stock and securities in Y. Section 354 does not apply to this exchange. See, however, section 356.

[5] SEC. 356(a). GAIN ON EXCHANGES.—

    (1) RECOGNITION OF GAIN.—If—

        (A) section 354 or 355 would apply to an exchange but for the fact that

        (B) the property received in the exchange consists not only of property permitted by section 354 or 355 to be received without the recognition of gain but also of other property or money,

then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

    (2) TREATMENT AS DIVIDEND.—If an exchange is described in paragraph (1) but has the effect of the distribution of a dividend, then there shall be treated as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be treated as gain from the exchange of property.

[6] We recognize that the parties devote much of their argument to whether the warrants are securities and that the validity of respondent's regulation (Income Tax Regs., sec. 1.354–1(e)) that "For the purpose of section 354, stock rights or stock warrants are not included in the term 'stock or securities' " is attacked by petitioners. We, however, consider it unnecessary to decide whether the warrants are securities since if they are, but are not stock, section 354 (a) (1) is nevertheless inapplicable.

whereas in the *Carlberg* case the holder of certificates of contingent interests needed to take no positive action or provide any additional consideration to become entitled to the reserved stock. Cf. *Miles* v. *Safe Deposit Co.*, 259 U.S. 247 (1922). Also in the *Carlberg* case the holder of the certificates of contingent interest was entitled to the accumulated dividends on the stock when and if the contingency was removed and the stock certificates issued to her. Cf. *Phillip W. McAbee*, 5 T.C. 1130, 1149–1150 (1943). In the instant case a payment was required before the warrant holder would be entitled to receive stock and the warrants did not entitle the holder to any dividends or other rights of stockholders until exercised with the required payments to receive the stock. The provisions of the warrants here involved are not distinguishable in any material respect from those involved in *Helvering* v. *Southwest Corp.*, *supra*. We, therefore, hold that the stock purchase warrants did not constitute stock. If they were securities, section 354(a)(1) is made inapplicable to this exchange by the provisions of section 354(a)(2)(B) and the fair market value of the warrants is recognized as gain to the extent provided in section 356 just as it would be if the warrants were not securities but were "other property."

Neither party takes the position that these warrants were not property at all. Both apparently recognize that the warrants are "property." It is also agreed that at the date of their issue the warrants had a fair market value even though the payment required to be made per share to receive Symington Wayne Corp. stock for them was in excess of the value per share of Symington Wayne Corp. stock at the date of their issue. Cf. *Palmer* v. *Commissioner*, 302 U.S. 63 (1937).

The remaining issue in the case is whether the distribution of the stock purchase warrants to petitioner had the effect of the distribution of a dividend within the meaning of section 356(a)(2). The parties are agreed that both petitioner's gain realized on the exchange of his shares and the earnings and profits of the Wayne Pump Co. exceed the fair market value of the stock purchase warrants received.

The question here is not the constitutional question considered in *Miles* v. *Safe Deposit Co.*, *supra*, since here, unlike in that case, the warrants were not issued to stockholders of the issuing corporation but were issued in exchange for stock of another corporation. The exchange constitutes a taxable event except to the extent that the Internal Revenue Code provides for nonrecognition of the gain resulting from the exchange. However, in considering whether the exchange "has the effect of a dividend" within the provisions of section 356(a)(2) some of the principles set forth in the *Safe Deposit Co.* case and in *Palmer* v. *Commissioner*, *supra*, involving the issuances to stockholders of rights to acquire stock of another corporation owned by the issuing corporation, are helpful. In the instant case as in

*Palmer* v. *Commissioner*, *supra*, nothing has been "distributed" out of either the Wayne Pump Co. or Symington Wayne Corp. to the stockholders of the Wayne Pump Co. All the assets of the Wayne Pump Co. were merged with those of Symington Wayne Corp. The warrants did not, as would notes or bonds, give the holders any rights to any money or other assets of either corporation on a creditor basis. In fact, the only right these warrants gave was to receive an additional equitable common stock interest in Symington Wayne Corp. by payment into that corporation of an amount in excess of the current fair market value of a similar equitable common stock interest at the date the warrants were issued. For these reasons, even though the warrants had a fair market value at the date of their issue, they had none of the characteristics of a "distribution of a dividend." We feel that unless such warrants are specifically made a "dividend" by statutory provisions, they should not be so considered.

We do not interpret the statutory provisions as requiring a holding that the issuance of the warrants here involved had the effect of a distribution of a dividend within the provisions of section 356(a).(2).

Section 316 defines a dividend in part as follows:

For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders—

Section 317 defines property as follows:

For purposes of this part, the term "property" means money, securities, and any other property; except that such term does not include stock in the corporation making the distribution (or rights to acquire such stock).

It is clear from these statutory provisions that the exchange can be considered to "have the effect of a dividend" only if the transaction is viewed as a distribution by the Wayne Pump Co. to petitioner since by definition a distribution to petitioner by Symington Wayne Corp. of rights to acquire its stock is not property within the definition of dividend. However, even though the stock and warrants of Symington Wayne Corp. were actually issued to petitioner by that corporation upon surrender of his stock in the Wayne Pump Co., since this was done upon a merger of the two corporations, the effect is the same as if Symington Wayne Corp. had issued the stock and warrants to the Wayne Pump Co. for its assets and the Wayne Pump Co. had distributed them to petitioner. Cf. *David T. Grubbs*, 39 T.C. 42 (1962).

Since this reorganization was a merger of the two corporations, we feel that in determining whether the exchange had "the effect of the distribution of a dividend" the distribution to petitioner of the Symington Wayne Corp. stock-purchase warrants should be viewed no differently than would the distribution to him of similar warrants of the Wayne Pump Co.

Respondent argues that because the definition of "property" in section 317 is expressly limited to part I of subchapter C of the Code

(secs. 301 through 318) it does not apply when the term "dividend" as defined in section 316 is taken out of part I of subchapter C and put into section 356 which is in part III of subchapter C.

We cannot agree with respondent. Section 316 defines "dividend" for purposes of the whole subtitle which includes sections 1 through 1552. Although the definition of "property" contained in section 317 may be limited to part I of subchapter C, the definition of "dividend" in section 316 is not so limited, and it is the definition of "dividend" that must be applied to section 356. It would lead to confusion should the meaning of the word "dividend" vary depending on where in the Code the word is located.

Respondent argues that his interpretation of the word "dividend" as applied to section 356(a)(2) was adopted by the Supreme Court in *Commissioner* v. *Estate of Bedford*, 325 U.S. 283 (1945).

In the *Bedford* case, there was a recapitalization under section 112(g)(1)(E) of the Revenue Act of 1936 wherein preferred stock was surrendered in return for new preferred, common, and cash. The taxpayer argued that the distribution more nearly had the effect of a partial liquidation than of a dividend. The Court in rejecting this argument stated (p. 287):

Respondent [taxpayer], however, claims that this distribution more nearly has the effect of a "partial liquidation" as defined in § 115(i).[5] But the classifications of § 115, which governs "Distribution by Corporations" apart from reorganizations, were adopted for another purpose. They do not apply to a situation arising within § 112. The definition of a "partial liquidation" in § 115(i) is specifically limited to use in § 115. To attempt to carry it over to § 112 would distort its purpose. [Footnote omitted.]

We construe this holding to mean that in characterizing transactions where there is a reorganization, the partial liquidation rules in section 115 of the 1939 Code do not apply and the amounts received by the shareholder are considered distributions to which section 112(c) (1) and (2) of the 1939 Code is applicable.

It does not follow that the term "dividend," other than as the term is limited by the concept of partial or total liquidations, changes meaning when used in section 112(c)(2) of the 1939 Code or section 356(a)(2). In fact, the Court in *Commissioner* v. *Estate of Bedford, supra*, indicated the opposite view when it continued from the above:

That limitation [limitation in sec. 115(i)] is not true of § 115(a) which defines "dividend" for the purpose of the whole title. Accordingly, this definition is infused into § 112(c)(2). Under § 115(a) a distribution out of accumulated earnings and profits is a "dividend", thus confirming the conclusion that a distribution of earnings and profits has the "effect of the distribution of a taxable dividend" under section 112(c)(2).

There was no question in the *Bedford* case whether the cash received by the shareholder did constitute property. Our attention has not

been called to, nor have we found, any case holding the receipt of stock-purchase warrants as having the effect of a dividend under section 356(a)(2).

Respondent contends that the proper reading of section 356 is that the stock warrants constitute "other property" under section 356(a)(1); that because gain is recognized on the receipt of the stock warrants under section 356(a), the distribution is deemed to be out of earnings and profits under the provisions of section 312(d)(1); therefore, the distribution of other property being out of earnings and profits has the effect of a dividend under the holding of the *Bedford* case.

Respondent's reasoning is faulty in that it assumes that section 312(d)(1) provides that distributions of stock or stock rights if other than tax free must be distributions out of earnings and profits. This interpretation is in conflict with the holding of the Supreme Court in *Commissioner* v. *Munter*, 331 U.S. 210 (1947). In *Commissioner* v. *Munter, supra*, the Supreme Court considered section 115(h) of the Internal Revenue Code of 1939, which insofar as here material is the same as section 312(d)(1) of the Internal Revenue Code of 1954 [7] as assuring that, in the tax exemption of reorganization distributions, the earnings and profits so exempt were acquired by the new corporations and taxable as income to stockholders when subsequently distributed. In that case the Supreme Court stated (p. 212):

Of course, when, as in the *Sansome* case, all the stockholders of the old corporation swap all their old stock for identical proportions of the new, there can be no doubt that the earnings and profits of the old have not been distributed and are passed on to the successor corporation. But if the predecessors' earnings and profits are not distributed in the course of the reorganization, they do not disappear simply because the successor corporation has some assets and owners in addition to those of the old corporation or corporations. See *Putnam* v. *United States*, 1 Cir. 149 F. 2d 721, 726. The congressional purpose to tax all stockholders who receive distributions of corporate earnings and profits cannot be frustrated by any reorganization which leaves earnings and profits undistributed in whole or in part. Insofar as accumulated earnings and profits have been distributed contemporaneously with the reorganization so as to become taxable to the distributees, they, of course, cannot be said to have been acquired by the successor corporation. But insofar as payments to the predecessor corporations or their stockholders do not actually represent taxable distributions of earnings and profits, those earnings and profits must be deemed to have become available for taxable distribution by the successor corporation.

[7] SEC. 312(d). CERTAIN DISTRIBUTIONS OF STOCK AND SECURITIES.—
(1) IN GENERAL.—The distribution to a distributee by or on behalf of a corporation of its stock or securities, of stock or securities in another corporation, or of property, in a distribution to which this Code applies, shall not be considered a distribution of the earnings and profits of any corporation—
(A) if no gain to such distributee from the receipt of such stock or securities, or property, was recognized under this Code, or
(B) if the distribution was not subject to tax in the hands of such distributee by reason of section 305(a).

Section 312(d)(1) makes no affirmative provision as to whether a gain upon receipt of property in exchange for stock in a corporation a party to a reorganization is taxable as a dividend. Only when the distribution of stock or stock rights is taxed as a dividend to the shareholder are earnings and profits reduced. *Samuel L. Slover*, 6 T.C. 884 (1946). Section 356 states that gain will be recognized to the extent of the "other property" but it does not state how the gain will be treated except where the exchange "has the effect of the distribution of a dividend." In the instant case the reorganization has left "earnings and profits undistributed." To no extent have "accumulated earnings and profits * * * been distributed contemporaneously with the reorganization." Under these circumstances the exchange of petitioner's stock in the Wayne Pump Co. in return for stock-purchase warrants of Symington Wayne Corp. in addition to stock of that corporation does not have "the effect of the distribution of a dividend."

Much of this same reasoning would, of course, apply in arguing that no gain at all should be recognized where common stock is exchanged for common stock and common stock purchase warrants. It is because of the limitations contained in sections 354 and 356 that we have to reach the opposite conclusion. There is no provision in the statute or rule in the law which requires a conclusion that the exchange had "the effect of the distribution of a dividend."

In *Commissioner* v. *Estate of Bedford, supra*, cash was distributed. Under the provisions of section 312(a), the distribution of cash by a corporation decreases the earnings and profits of that corporation. Therefore, the Court there could conclude that the distribution was out of earnings and profits and had the effect of a dividend. Cf. *David T. Grubbs, supra*.

We hold that the exchange of petitioner's stock in the Wayne Pump Corp. for stock and stock-purchase warrants of Symington Wayne Corp. did not have the effect of the distribution of a dividend and, therefore, the $21,131 representing the fair market value of the warrants petitioner received upon the exchange is taxable to him as long-term capital gain.

*Decision will be entered under Rule 50.*