ESTATE OF CHARLES A. SMITH, DECEASED, DONALD C. SMITH, EXECUTOR, ET AL., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF CHARLES A. SMITH, DECEASED, DONALD C. SMITH, ET AL., EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 7378–71, 5746–73.     Filed March 27, 1975.

*George M. Zimmermann* and *Ralph J. Gregg,* for the petitioner.
*John D. Steele, Jr.,* for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency in the amount of $38,145.91 in petitioner's Federal estate tax (docket No. 7378–71) and a deficiency of $170,717.58 in petitioner's Federal income tax for the taxable period August 13, 1967, to July 31, 1968 (docket No. 5746–73).

The issues presented for decision are:

1. Whether the value of stock purchase warrants of Gulf & Western Industries, Inc., received by the Estate of Charles A. Smith, deceased, in connection with a reorganization falling under section 368 (a)(1)(A)[1] is taxable to the estate, and if so, whether the value of the warrants is taxable as long-term capital gain or as a dividend; and

2. Whether the warrants of Gulf & Western Industries, Inc., received by the estate in the reorganization should be valued under section 2032 for estate tax purposes as of the date of the reorganization-exchange or as of the date 1 year after the decedent's death.

### FINDINGS OF FACT

Donald C. Smith, coexecutor of the Estate of Charles A. Smith, deceased (hereinafter referred to as the estate), was a legal resident of Buffalo, N.Y., at the time the petitions herein were filed. The estate timely filed an estate tax return. It also filed a fiduciary income tax return for the taxable period August 13, 1967, through July 31, 1968.

At the time of his death on August 13, 1967, Charles A. Smith (hereinafter referred to as decedent) owned 41,738 shares of Con-

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax periods in issue, i.e., Aug. 13, 1967—the date of the decedent's death—in docket No. 7378–71, and Aug. 13, 1967, to July 31, 1968, in docket No. 5746–73, unless otherwise noted.

solidated Cigar Corp. (hereinafter Consolidated) common stock which had a value at that time of $1,022,581. On January 11, 1968, Consolidated was merged into Gulf & Western Industries, Inc. (hereinafter G&W), in a statutory merger of the type described in section 368(a). As a result of the merger, the estate received in exchange for its 41,738 shares of Consolidated common stock the following: (1) 4,637 shares of G&W series B preferred stock (hereinafter sometimes referred to as G&W preferred), (2) 8,347 warrants to purchase G&W common stock at $55 per share (hereinafter referred to as the warrants), and (3) money in the amount of $121.65 in lieu of fractional shares. This money was received from the sale of fractional interests in the open market; it did not come from either Consolidated or G&W. The G&W preferred gave its owners equal voting rights with all other classes of G&W stock.

A proxy statement issued to G&W shareholders describes the warrants as follows:

The Warrants which will be issued to holders of Consolidated Common Stock will entitle the holders to purchase shares of G&W Common Stock for $55 per share during a ten-year term commencing on the Effective Date of the Consolidated Merger. The purchase price and the total number of shares of G&W Common Stock issuable upon exercise are subject to adjustment in case of a split, reverse split or other reclassification of G&W Common Stock; or if rights or warrants are issued to all holders of shares of G&W Common Stock entitling them for a period of 45 days to purchase shares of G&W Common Stock at a price per share less than the current market price; or if any other securities (other than G&W Common Stock) or assets (other than cash payable out of consolidated earnings or earned surplus) are distributed to all holders of G&W Common Stock. An adjustment will also be made in case of dividends payable in shares of G&W Common Stock to the extent that such dividends in any fiscal year exceed five per cent of the outstanding Common Stock. No adjustment will be required if G&W otherwise issues, in exchange for cash, property or services, shares of G&W Common Stock or any security carrying rights to acquire G&W Common Stock. No adjustment will be required unless such adjustment will require an increase or decrease of at least $1 in the purchase price, but any adjustments not made by reason of this provision will be carried forward and taken into account at the time of any subsequent adjustment.

If G&W consolidates with or merges into or sells its assets to another corporation, and G&W is not the continuing corporation in such consolidation, merger or sale of assets, a holder of a Warrant will be entitled to receive the securities or property to which a holder of the number of shares of Common Stock then deliverable upon the exercise of such Warrant would have been entitled to receive upon such consolidation or merger.

Fractional shares of Common Stock will not be issued on exercises of Warrants, but G&W shall, in lieu thereof, either make a payment in cash based

on the purchase price of the Common Stock purchasable upon the exercise of the Warrants, or issue scrip certificates (of such duration as determined by the Board of Directors) evidencing such fractional interests, which certificates may be combined and exchanged for whole shares of Common Stock of the Company.

Until a Warrant is exercised, its holder will not be entitled to any of the rights of a stockholder of G&W.

The proxy statement also states:

Consolidated has requested the Internal Revenue Service to issue rulings to the effect that: (a) the merger of Consolidated into G&W will constitute a reorganization within the meaning of the Internal Revenue Code; (b) no gain or loss will be recognized by G&W, Consolidated or New Consolidated as a result of such merger or the transactions contemplated thereby; (c) gain (but not loss) will be recognized by the stockholders of Consolidated upon the conversion and exchange of their Consolidated Common Stock for G&W Series B Preferred Stock and Warrants (including fractional interests), limited to the fair market value of the Warrants; (d) the basis of the G&W Series B Preferred Stock will be the basis of the Consolidated Common Stock exchanged therefor, increased by the gain, if any, recognized upon the exchange and decreased by the fair market value of the Warrants; (e) the holding period of stockholders of Consolidated Common Stock of the Series B Preferred Stock received in exchange therefor, including fractional interests, will include the holding period during which such Consolidated Common Stock was held or deemed to be held by stockholders of Consolidated; (f) the basis of the Warrants received in exchange for the Consolidated Common Stock will be the fair market value thereof on the Effective Date of the merger, and the holding period of such Warrant will date from said Effective Date; (g) holders of Consolidated Common Stock selling fractional interests in shares of G&W Series B Preferred Stock received on the merger will realize gain or loss on such sale, which gain or loss will constitute capital gain or loss provided that the Consolidated Common Stock is a capital asset in the hands of the stockholders; * * *

The shares of Consolidated which were owned by the estate prior to the merger constituted approximately .0082 percent of the total outstanding voting stock of Consolidated. The Consolidated stock earned dividends of 60 cents per share in the first 6 months of 1967. The shares which the estate owned in G&W after the merger represented approximately .0003 percent of the total outstanding voting stock of G&W. The affirmative vote of two-thirds of Consolidated stockholders was sufficient to approve the merger. Due to its limited ownership of voting stock in Consolidated, the estate could not have prevented the merger from taking place.

On August 13, 1968, 1 year after decedent's death (hereinafter sometimes referred to as the anniversary date), the estate con-

tinued to hold the G&W preferred and the warrants which it received in the merger.

The G&W preferred was traded on the New York Stock Exchange prior to and following the merger. The warrants were traded on the New York Stock Exchange after completion of the merger. The market values of the G&W preferred and the warrants on January 11, 1968—the date of the merger, and August 13, 1968—1 year after the date of decedent's death, are as follows:

|  | Jan. 11, 1968 | Aug. 13, 1968 |
|---|---|---|
| 4,637 shares G&W, $3.50 convertible preferred, series B | $1,156,351.88 | $756,990.25 |
| 8,347 G&W warrants | 238,932.88 | 131,465.25 |

The financial data of G&W and Consolidated as of the date of the merger do not reflect a distribution of any earnings and profits by either corporation. Neither the paid-in surplus nor the shareholders' equity of either corporation was adjusted as a result of the issuance of the G&W warrants to the Consolidated shareholders.

In its fiduciary income tax return for the period August 13, 1967, through July 31, 1968, the estate reported no gain from the exchange. The estate timely filed its estate tax return and elected the alternate valuation method for the property in the gross estate pursuant to section 2032. The estate reported the value of its 41,738 shares of Consolidated (surrendered in the merger) as being the combined value of the G&W preferred and the warrants, plus the $121.65 in cash, as of August 13, 1968, or $888,449.63.[2]

Respondent issued notices of deficiency with respect to the estate and income tax returns filed by petitioner. Respondent determined that the estate realized gain in the amount of $239,054.53 as a result of the merger and that the gain was taxable as a dividend. On examination of the estate tax return, respondent determined that the appropriate valuation date for the warrants was January 11, 1968—the date of the merger— rather than August 13, 1968, 1 year after the date of decedent's death. The higher value of the warrants on the earlier date produced the contested deficiency.

---

[2] The parties have stipulated that the combined value of the G&W preferred and warrants on Aug. 13, 1968, was $888,455.50.

OPINION

The income tax consequences of the receipt of the G&W warrants and the estate tax valuation thereof are in dispute. We hold that the estate realized no taxable gain on the stock exchange in the merger of Consolidated into G&W, and we sustain respondent's determination that the warrants are includable in decedent's gross estate at their value as of the date of the merger.

## 1. *The Income Tax Issue*

The parties agree that Consolidated's merger into G&W on January 11, 1968, was a reorganization of the type described in section 368(a)(1)(A). Where the stock or securities of one of the parties to such a reorganization are exchanged "solely" for the stock or securities of the other party, section 354(a)[3] provides generally that no gain or loss shall be recognized. However, the "solely" requirement of that section was not met in the instant case unless the G&W warrants received in the exchange are treated as G&W stock.

Under the most recent decision of this Court on the subject, *William H. Bateman,* 40 T.C. 408 (1963), appeal dismissed (C.A. 4, Jan. 28, 1964), the G&W warrants were not stock within the meaning of section 354(a)(1).[4] Section 354(a) applies only where stock is surrendered solely for stock, securities are surrendered solely for securities in an equal or lesser principal amount, or securities are surrendered for stock and securities in an equal or

---

[3] SEC. 354. EXCHANGES OF STOCK AND SECURITIES IN CERTAIN REORGANIZATIONS.
  (a) GENERAL RULE.—
    (1) IN GENERAL.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.
    (2) LIMITATION.—Paragraph (1) shall not apply if—
      (A) the principal amount of any such securities received exceeds the principal amount of any such securities surrendered, or
      (B) any such securities are received and no such securities are surrendered.
    (3) CROSS REFERENCE.—
      For treatment of the exchange if any property is received which is not permitted to be received under this subsection (including an excess principal amount of securities received over securities surrendered), see section 356.
  [4] Although the estate does not waive or concede the point, its briefs recognize that the weight of authority is that the warrants here involved are not stock. In view of our conclusion that no taxable gain was realized under sec. 356(a), regardless of whether the warrants are stock, the question as to the character of the warrants is not crucial to the income tax issue here presented.

lesser principal amount. *William H. Bateman, supra* at 413; *Carlberg v. United States,* 281 F.2d 507, 509 fn. 3 (C.A. 8, 1960); sec. 1.354–1, Income Tax Regs. Since the estate surrendered only its Consolidated stock and received both G&W stock and warrants, the "solely" requirement of section 354 is not met.

Where section 354 would apply to an exchange but for the fact that the property received in the exchange consists not only of property permitted by that section to be received without the recognition of gain but also of "other property or money" (often referred to as boot), section 356[5] must be examined. Sec. 354(a)(3). Section 356(a)(1) provides that, in such circumstances, "the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property." Relying upon paragraphs (1) and (2) of section 356(a), respondent contends that in the Consolidated-G&W merger, the estate recognized gain, which was taxable as a dividend, in an amount equal to the money plus the value of the G&W warrants received in the transaction.[6]

Section 356(a)(1) requires two computations: (1) To determine the amount of the gain, if any, realized on the exchange, and (2) if gain was realized, to compare the amount of such gain with the sum of the money plus the fair market value of the "other property" received in the exchange. See sec. 1.356–1(c), Income Tax Regs. If the exchange does not result in the realization of any gain, there is no tax liability even though

[5] SEC. 356. RECEIPT OF ADDITIONAL CONSIDERATION.

(a) GAIN ON EXCHANGES.—

(1) RECOGNITION OF GAIN.—If—

(A) section 354 or 355 would apply to an exchange but for the fact that

(B) the property received in the exchange consists not only of property permitted by section 354 or 355 to be received without the recognition of gain but also of other property or money,

then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

(2) TREATMENT AS DIVIDEND.—If an exchange is described in paragraph (1) but has the effect of the distribution of a dividend, then there shall be treated as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be treated as gain from the exchange of property.

[6] The parties have briefed extensively the question of whether, under the facts of this case, the gain determined by respondent to have been recognized on the exchange was taxable as capital gain or had "the effect of the distribution of a dividend" under sec. 356(a)(2). Respondent urges us to overrule our holding in *William H. Bateman,* 40 T.C. 408, 415–419 (1963), appeal dismissed (C.A. 4, Jan. 28, 1964), on that question. In view of our conclusion that no gain was realized in the transaction, it is not necessary to resolve that issue in this case.

both money and other property are received in the exchange. Sec. 356(a) and (c); sec. 1.356–1(c), *Example (2),* Income Tax Regs. If gain is realized, the recognized gain may not exceed the sum of the money plus the fair market value of the other property.

In making these two computations,[7] respondent treated the merger date value of both the G&W warrants ($238,932.88) and the G&W preferred ($1,156,351.88) plus the money ($121.65) as the amount ($1,395,406.41) received in the exchange. For the purpose of determining whether the amount so received was realized gain, respondent added the merger date value of the warrants ($238,932.88) to the anniversary date (August 13, 1968) value of the G&W preferred ($756,990.25) and treated the sum ($995,923.13) as the estate's basis in the Consolidated stock. Subtracting the basis so determined from the amount realized, respondent arrived at his determination that gain ($399,483.28) was realized on the exchange. Since the realized gain so computed exceeded the sum of the value of the warrants plus the money, respondent determined that the recognized gain was the lower of the two figures (a total of $239,054.53).

Respondent's computations assign two different values to the G&W preferred. Its merger date value is used in calculating the amount realized, and its anniversary date value is used in determining the estate's basis in the stock. Under those computations, the estate's basis in the stock and, consequently, the amount of the recognized gain could not have been ascertained until the anniversary date, over 7 months after the merger was

---

[7] The computations in the notice of deficiency in docket No. 5746–73 are as follows:

Realized gain:

| | | |
|---|---|---:|
| Value of G&W warrants (1/11/68) | | $238,932.88 |
| Value of G&W preferred stock (1/11/68) | | 1,156,351.88 |
| Cash | | 121.65 |
| Total amount realized to the estate (1/11/68) | | 1,395,406.41 |
| Less the basis of 41,738 shares of Consolidated stock: | | |
| Value of G&W warrants (1/11/68) | $238,932.88 | |
| Value of G&W preferred stock (8/13/68) | 756,990.25 | 995,923.13 |
| Total gain realized | | 399,483.28 |
| | | |
| Recognized gain: | | |
| Value of warrants received (1/11/68) | | 238,932.88 |
| Cash received (1/11/68) | | 121.65 |
| Total—"Other property and money" | | 239,054.53 |

completed. Indeed, in the case of an estate filing a calendar year return, if the merger had been completed prior to December 31, 1967, the amount of the gain could not have been computed until nearly 4 months after the due date of the return. And the *gain* finally determined in this case was attributable *entirely* to the *decrease in the value* of the G&W stock between the merger date, when it was received, and the anniversary date, over 7 months later. Commonsense tells us those computations are wrong, and so does the Code.[8]

Section 1014(a),[9] dealing with the basis of property acquired from a decedent, provides that, in the case of an election under section 2032, the basis of such property shall be its "value at the applicable valuation date." Section 1.1014-3(e), Income Tax Regs.,[10] provides that if the decedent's property was—

distributed, sold, exchanged, or otherwise disposed of within one year after the date of the decedent's death * * *, the value applicable in determining the basis is its value as of the date of such distribution, sale, exchange, or other disposition.

In the January 11, 1968, merger, the estate exchanged its Consolidated stock for the G&W stock, G&W warrants, and the small amount of money. At that time the Consolidated stock given in the exchange—obviously an arm's-length, completed

---

[8] As noted in the text, the determined gain is attributable solely to the spread between the merger date value and the anniversary date value of the G&W stock. This determination is inconsistent with respondent's concession that, in the words of sec. 356(a)(1)(B), such stock was "property permitted by section 354 * * * to be received without the recognition of gain."

[9] SEC. 1014. BASIS OF PROPERTY ACQUIRED FROM A DECEDENT.

(a) IN GENERAL.—Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, if not sold, exchanged, or otherwise disposed of before the decedent's death by such person, be the fair market value of the property at the date of the decedent's death, or, in the case of an election under either section 2032 or section 811(j) of the Internal Revenue Code of 1939 where the decedent died after October 21, 1942, its value at the applicable valuation date prescribed by those sections.

[10] Sec. 1.1014-3 Other basis rules.

(e) *Alternate valuation dates.* Section 1014(a) provides a special rule applicable in determining the basis of property described in § 1.1014-2 where—
* * *
* * * [In cases where the executor elects for estate tax purposes under sec. 2032 to value the decedent's gross estate], the value applicable in determining the basis of the property is not the value at the date of the decedent's death but (with certain limitations) the value at the date one year after his death if not distributed, sold, exchanged, or otherwise disposed of in the meantime. If such property was distributed, sold, exchanged, or otherwise disposed of within one year after the date of the decedent's death by the person who acquired it from the decedent, the value applicable in determining the basis is its value as of the date of such distribution, sale, exchange, or other disposition. For illustrations of the operation of this paragraph, see the estate tax regulations under section 2032.

transaction—had a value equal to the total value of the stock, warrants, and cash received in the exchange. See *United States v. Davis*, 370 U.S. 65, 72 (1962). Accordingly, the estate's basis was the same as the value of the items received in the exchange, and the estate realized no taxable gain in the transaction.[11]

As discussed later in this opinion, respondent concedes that the G&W stock should be valued for estate tax purposes as of the anniversary date. This concession is made on the theory that, even though the income tax consequences of the merger are governed by section 356, the G&W stock is property permitted by section 354 to be received without the recognition of gain. The G&W stock is treated as a mere changed form of the estate's investment within the meaning of section 20.2032–1(c), Estate Tax Regs., and the warrants are treated as having been received in an exchange.[12]

Notwithstanding that concession for estate tax purposes as to the G&W stock, it is clear that the estate exchanged its Consolidated stock for the G&W stock, warrants, and money. Indeed, sections 354 and 356 apply only where an exchange has occurred. The exchange was obviously a completed transaction, and we can find no ground in the statute for relating the anniversary date value of the G&W stock back to the date of the merger [13] for the purpose of determining the estate's basis in the Consolidated stock at the time of the merger. To the contrary, under section 1.1014–3(e), Income Tax Regs., the estate's basis in the Consolidated stock was its value as of the date of the merger.

Significantly, the nonrecognition-of-gain provisions of the Code, such as sections 354 and 356, are not premised on the theory that the parties to a reorganization do not make an exchange. Rather, they are based on the theory that the parties making the exchange in a statutorily specified manner have

---

[11] As noted in fn. 4 *supra,* petitioner has concentrated most of its arguments in its briefs in support of its position that any gain realized from the merger was taxable as capital gain rather than as ordinary income. However, par. 5(d) of the petition in docket No. 5746–73 is as follows:

"The basis of petitioner's interest in its 41,738 shares of Consolidated Cigar Corp. was equal to the fair market value of the stock and warrants of Gulf & Western Industries, Inc. received on said merger. Petitioner realized no gain from said exchange."

[12] One rationalization offered by respondent for this treatment is that the estate exchanged a partial interest in its Consolidated stock for the warrants and cash but merely changed the form of the remainder of its interest in the Consolidated stock by accepting the G&W stock. That theory is, of course, wholly incompatible with both secs. 354 and 356 on which respondent relies to impose a tax on the determined gain.

[13] Compare Rev. Rul. 63–223, 1963–2 C.B. 100.

simply changed the form of their corporate holdings and that the interests of the shareholders of the reorganized corporation continue to be represented in substantial measure in a new or different one. To that extent the exchange is to be treated as one not giving rise to present gain or loss. *Groman v. Commissioner,* 302 U.S. 82, 89 (1937); *Carlberg v. United States,* 281 F.2d at 518–519; secs. 1.368–1(b), 1.1002–1(c), Income Tax Regs. The income tax consequences in this case must be determined, therefore, in the light of the practical fact that the estate exchanged its Consolidated stock for the G&W stock, warrants, and money and, consequently, section 1.1014–3(e), Income Tax Regs., quoted in footnote 10 *supra,* applies in determining the estate's basis in the Consolidated stock.

## 2. *The Estate Tax Issue*

In the notice of deficiency in docket No. 7378–71, respondent determined that the G&W warrants were includable in decedent's gross estate at a value of $238,932.88, their value as of the date of the merger. The estate alleges that the warrants are includable in the gross estate, under section 2032(a),[14] at a value of only $131,459.38, their value on the date 1 year after decedent's death.

Section 2032(a)(2), as it read during the period in controversy, provided that property "not distributed, sold, exchanged, or otherwise disposed of" shall be valued as of 1 year after the decedent's death. However, section 2032(a)(1) provided that if the property was "distributed, sold, exchanged, or otherwise disposed of" within that 1-year period, such property shall be valued as of the date of the distribution, sale, exchange, or other disposition.

Since the estate's Consolidated stock was exchanged for the G&W stock, warrants, and money in the January 11, 1968, merger, those provisions of section 2032, standing alone, would seem clearly to require all the property so received, the G&W

---

[14] SEC. 2032. ALTERNATE VALUATION.

(a) GENERAL.—The value of the gross estate may be determined, if the executor so elects, by valuing all the property included in the gross estate as follows:

(1) In the case of property distributed, sold, exchanged, or otherwise disposed of, within 1 year after the decedent's death such property shall be valued as of the date of distribution, sale, exchange, or other disposition.

(2) In the case of property not distributed, sold, exchanged, or otherwise disposed of, within 1 year after the decedent's death such property shall be valued as of the date 1 year after the decedent's death.

stock as well as the warrants, to be valued as of the merger date for gross estate computation purposes. Section 20.2032–1(c), Estate Tax Regs.,[15] amplifying section 2032, however, states that the term "exchanged" does not "extend to transactions which are mere changes in form" and gives several "illustrations" [16] of the operation of this provision. In his opening brief, respondent has stated succinctly his views on the effect of this regulation as follows:

Treas. Reg. §20.2032-1(c) provides that "[t]he phrase 'distributed, sold, exchanged, or otherwise disposed of' comprehends all possible ways by which property ceases to form a part of the gross estate". However, the term does not extend to transactions which are mere changes in form, including an exchange of stock or securities in a corporation for stock or securities in another corporation in a transaction described in sections 368(a) or 355, with respect to which no gain or loss is recognized for income tax purposes under sections 354 or 355.

Since the G&W preferred stock is property permitted by section 354 to be received without the recognition of gain, the exchange of the Consolidated common stock for the G&W preferred is a "mere change of form" within the meaning of Treas. Reg. § 20.2032–1. Thus, for purposes of the alternate valuation method the 4,637 shares of G&W preferred must be reported at their fair market value as of August 13, 1968—$756,990.25.

The 8,347 G&W warrants, however, are not property permitted to be received without the recognition of gain under section 354[5] and, consequently, there was an "exchange" within the meaning of Treas. Reg. § [20.] 2032–1(a)(1) with respect to these warrants and not a "mere change in form". Thus, for purposes of the alternate valuation method, the 8,347 G&W warrants must be reported at their fair market value as of January 11, 1968—$238,932.88. [Fn. omitted.]

---

[15] Sec. 20.2032–1 Alternate valuation.

(c) *Meaning of "distributed, sold, exchanged, or otherwise disposed of".* (1) The phrase "distributed, sold, exchanged, or otherwise disposed of" comprehends all possible ways by which property ceases to form a part of the gross estate. For example, money on hand at the date of the decedent's death which is thereafter used in the payment of funeral expenses, or which is thereafter invested, falls within the term "otherwise disposed of." The term also includes the surrender of a stock certificate for corporate assets in complete or partial liquidation of a corporation pursuant to section 331. The term does not, however, extend to transactions which are mere changes in form. Thus, it does not include a transfer of assets to a corporation in exchange for its stock in a transaction with respect to which no gain or loss would be recognizable for income tax purposes under section 351. Nor does it include an exchange of stock or securities in a corporation for stock or securities in the same corporation or another corporation in a transaction, such as a merger, recapitalization, reorganization or other transaction described in section 368(a) or 355, with respect to which no gain or loss is recognizable for income tax purposes under section 354 or 355.

[16] Sec. 1.1014–3(e), Income Tax Regs., refers to the Estate Tax Regulations under sec. 2032 as giving "illustrations" of the operation of the basis provisions. Those provisions are coordinated with the estate tax valuation provisions.

Thus, respondent would give the same estate tax treatment to stock permitted by section 354 to be received without the recognition of gain, even though other property was also received in the reorganization exchange, as would be given to the receipt of stock received solely in exchange for stock in a reorganization exchange meeting all the requirements of section 354.

Accepting respondent's concession that the G&W stock should be valued as of the anniversary date,[17] we do not think a similar conclusion can be reached with respect to the warrants. True, in a general sense, every piece of property acquired in an ordinary business trade is a changed form of the original investment. But section 20.2032–1(c) of the Estate Tax Regulations, on which the estate must rely to value the G&W stock as of the anniversary date rather than the merger date, is keyed to the nonrecognition-of-gain provisions of sections 354, 355, and 368(a). Those provisions deal with specific exchanges of property in which "at the time of the exchange particular differences exist between the property parted with and the property acquired, but such differences are more formal than substantial." Sec. 1.1002–1(c), Income Tax Regs. See also sec. 1.368–1(b) of the regulations.

The differences between the G&W stock and the warrants are substantial. The proxy statement issued to the G&W shareholders declared that: "Until a Warrant is exercised, its holder will not be entitled to any of the rights of a stockholder of G&W." The warrants thus gave their holders no rights to receive dividends, to vote at shareholder meetings, or to participate in a liquidation distribution. Moreover, the warrants were freely traded on the stock exchange apart from the G&W stock. While their exercise could result only in the receipt of G&W stock, the holders were under no compulsion to pay the specified price and acquire stock. If they should fail to do so, at the end of 10 years the warrants will expire.

In *Helvering v. Southwest Corp.*, 315 U.S. 194, 200–201 (1942), the Court, holding that warrants were not "voting stock"

---

[17] Since the notice of deficiency in docket No. 7378–71 determined the value of only the warrants as of the merger date, the parties have not briefed the question of whether the G&W stock should be valued under sec. 2032(a)(1) as of the date of the merger. For the purposes of this case, we accept respondent's concession that the G&W stock should be valued as of the anniversary date. Since the Code contains several other nonrecognition-of-gain provisions applicable to individual taxpayers (e.g., secs. 351, 355, 371(b), 721, 1031, and 1036), the implications may extend beyond this case. Our decision here is limited to the controverted issue as to the proper valuation date of the warrants.

within the meaning of the predecessor of section 368(a)(1)(B), described some of the rights of a warrant holder in these words:

Whatever rights a warrant holder may have "to require the obligor corporation to maintain the integrity of the shares" covered by the warrants * * *, he is not a shareholder. * * * His rights are wholly contractual. As stated by Holmes, J., * * * he "does not become a stockholder by his contract in equity any more than at law." At times, his right may expire on the consolidation of the obligor corporation with another. * * * If, at the time he exercises his right, there are no authorized and unissued shares to satisfy his demand, he will get damages, not specific performance. * * * Thus, he does not have, and may never acquire, any legal or equitable rights in shares of stock. * * * And he cannot assert the rights of a shareholder. * * *

The G&W proxy statement defining the terms of the warrants dealt specifically with the rights of the warrant holders on some of the points here mentioned by the Court, but those points serve nevertheless to emphasize the differences between the rights attributable to stock ownership and the rights flowing from the ownership of warrants.

The substantive differences between stock and warrants have been recognized repeatedly in other contexts in applying the several nonrecognition-of-gain provisions. See, e.g., *William H. Bateman,* 40 T.C. at 415; *Commissioner v. Baan,* 382 F.2d 485, 492 (C.A. 9, 1967), affirmed sub nom. *Commissioner v. Gordon,* 391 U.S. 83 (1968); *Gordon v. Commissioner,* 424 F.2d 378, 381–383 (C.A. 2, 1970), affirming 51 T.C. 1032, 1038 (1969). Section 1.354–1(e), Income Tax Regs., declares that: "For the purpose of section 354, stock rights or stock warrants are not included in the term 'stock or securities'." Indeed, the income tax ruling request, quoted in the G&W proxy statement, recognizes the difference in the character of the stock and the warrants by asking that no gain be recognized on receipt of the G&W stock but that gain be recognized to the extent of the fair market value of the warrants received in the exchange.[18]

---

[18] Warrants have been described as "equity-flavored" securities which should receive tax-free treatment when received in a sec. 368(a)(1)(A) reorganization. See Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, pp. 14–76 to 14–77 (3d ed. 1971); Report, "Stock Warrants in Corporate Organizations and Reorganizations," Special Committee on Reorganization Problems, Tax Sec., N.Y.S. Bar Assn. (July 29, 1968). Compare decisions involving contingent stock interests. *Carlberg v. United States,* 281 F.2d 507, 509 (C.A. 8, 1960); *James C. Hamrick,* 43 T.C. 21 (1964). However, we think the citations in the text and the context in which the issue arises in this case preclude a holding that the G&W warrants were a mere changed form of the estate's investment in the Consolidated stock within the meaning of sec. 20.2032–1(c), Estate Tax Regs.

Had gain been realized in the merger-exchange, section 356 would have limited the recognizable gain to the sum of the money plus the fair market value of the warrants, treating the G&W stock as "property permitted by section 354 * * * to be received without the recognition of gain." Similarly, section 358 would maintain a distinction, similar in principle, in determining bases for the G&W stock ("nonrecognition property") and the warrants ("other property"). Respondent interprets section 2032(a) and its implementing regulation to maintain this same dichotomy, allowing the G&W stock to be treated as a changed form of the estate's investment but denying that treatment to the warrants.

We can find no basis in the law for holding that the warrants are to be treated as a mere change in the form of the estate's investment in the Consolidated stock. We think it quite clear that they were received in exchange for the estate's Consolidated stock and, under section 2032(a)(1), should be valued as of the date of the merger.

*Decisions will be entered under Rule 155.*